*G. A. H. Harris & Son* and *R. L. Chamlee*, for plaintiff in error. *Rowell & Rowell*, contra.

---

### SMITH *v.* GEORGIA LOAN AND TRUST COMPANY.

While inadequacy of price at a sheriff's sale will not, of itself, be a sufficient ground to set aside the sale, yet when it is grossly inadequate and is connected with fraud, mistake, misapprehension, surprise, or other circumstances which tend to bring about such inadequacy, to the injury of parties interested, the sale will be set aside by a court of equity. When, therefore, upon a day of sale counsel for the plaintiff in execution and also the defendant therein requested the sheriff not to expose the property for sale until a certain agreement had been executed by the plaintiff and the defendant, and the sheriff assented to the request, but subsequently, through mistake or misapprehension, sold the property, worth from $2,000 to $3,000, before the agreement was executed and before the parties arrived at the place of sale, for the sum of $40, the inadequacy was so gross as to authorize a court of equity under the circumstances to set it aside. This is true although the purchaser at such sale was not in fault and had no notice of any irregularity, for by purchasing he subjected himself to the power of the court, upon a proper showing, to set aside the sale upon equitable terms.

Argued October 16, — Decided November 9, 1901.

Equitable petition. Before Judge Henry. Floyd superior court. April 15, 1901.

*Halsted Smith,* for plaintiff in error, cited: Civil Code, §§ 5454, 3549; *Sullivan* v. *Hearnden,* 11 *Ga.* 296 (2); *Brooks* v. *Rooney,* Id. 424 (6), (7), 423 (5); *Solomon* v. *Peters,* 37 *Ga.* 255; *Van Dyke* v. *Martin,* 53 *Ga.* 221; *Gunn* v. *Slaughter,* 83 *Ga.* 124 (3); *Conley* v. *Redwine,* 109 *Ga.* 640, 644, and citations; *Johnson* v. *Dooly,* 72 *Ga.* 301; *Fears* v. *State,* 102 *Ga.* 284; *Forbes* v. *Hall,* Id. 49.

*Dean & Dean,* contra, cited: 1 Freeman, Executions (3d ed.), § 108; Rorer, Jud. Sales (2d ed.), §§ 1087, 1095; Lawyers' Co-operative Pub. Co. v. Bennett, 34 Fla. 302; Jackson *v.* Anderson, 4 Wend. 474; Morgan *v.* People, 59 Ill. 58; *Jones* v. *Hurst,* 91 *Ga.* 338, s. c. 95 *Ga.* 286.

SIMMONS, C. J.   From the plaintiff's petition it appears that Ayer borrowed from the Georgia Loan and Trust Company a certain sum of money and gave it a security deed. Ayer being unable to pay the money when the debt became due, the company brought its action on his note and obtained judgment for $1,700. It filed in the clerk's office a deed conveying the land back to Ayer, as provided by the code, and had the sheriff to levy upon the same as Ayer's property. This land was worth about $1,500 and had on it a growing crop worth nearly as much. On the day the property was to be sold by the sheriff, Ayer made to the attorneys for the company a proposition which they, after telephoning to their client, whose residence was 200 miles away, accepted. It seems to have been necessary for them to go to the telephone exchange to converse with the proper parties. Before leaving for the exchange they notified the sheriff of their purpose in going, and requested and instructed him not to sell the property until their return. Their client agreeing to the proposition made by Ayer, they returned to the court-house in front of which the sale was to be had, and commenced to reduce the agreement to writing. The sheriff entered the room and inquired if they were ready for the sale to proceed. They informed him that they were not quite ready, and asked him to hold the sale off until he had finished selling all the other property advertised for sale on that day. This he agreed to do. A few minutes later and unknown to plaintiff's counsel, Ayer went out and said to the sheriff: "When you get ready to sell, get

through as quick as possible; they are going to buy it in and I will get it, and I don't want the commissions run up on me." The agreement, by which the company was to bid in the property and allow Ayer to hold it on certain terms, was reduced to writing and executed. Counsel for the company then, within fifteen or twenty minutes from the time the sheriff had last agreed to hold the sale, went to the court-house door and were informed that the sheriff had sold the property to Mr. Smith for $40. At this time the sheriff had not finished making his other sales, but was proceeding with them. Counsel for the company would, if the property had not been sold before their arrival, have bid for it the amount of their judgment. They immediately proposed to the purchaser that the sale be opened, but he declined to consent to this. They then requested the sheriff to open the sale so as to give them an opportunity to bid, but this he declined to do without the consent of the purchaser. The trust company thereupon filed its equitable petition, reciting the above facts, and praying that the sale be set aside on the ground of gross inadequacy of price and of the mistake or misapprehension of the sheriff, and for the appointment of a receiver to take charge of the land and of the growing crops until the further order of the court. To this petition the purchaser demurred. The demurrer contained 27 grounds. These grounds, boiled down to their last analysis, amounted to but two: that there was no equity in the petition, because the facts set out were not such as to authorize a court of equity to set the sale aside, mere inadequacy of price being the only ground for such action; and that, even if there was sufficient cause shown for setting aside a sale as among the parties, the defendant was without knowledge or notice of any irregularity, and was himself free from fault, and equity would not interfere with his rights. The demurrer was overruled, and the purchaser excepted.

Our Civil Code, § 3549, declares that "Inadequacy of price is no ground for rescission of a contract of sale, unless it is so gross as combined with other circumstances to amount to a fraud." Any one who will read the facts above recited will declare without hesitation that the price paid for this property was grossly inadequate. A tract of land worth, according to the allegations of the petition, $1,500, with a crop upon it worth as much, was bid in by the plaintiff in error for $40, about 1/75 of its real value. The inade-

quacy is such as to shock the moral sense. If the sale stands, it deprives the plaintiff in execution of $1,700 less $40, the price paid by the purchaser; and it deprives the defendant in execution of all of his property and leaves the execution still standing against him with a credit of only $40 thereon. A majority of the courts hold that mere inadequacy of price is not alone sufficient ground for setting aside a sale, though all seem to hold that, where the inadequacy is gross, they will take hold of any fraud, irregularity, misapprehension, or surprise, to hold the sale void. While the code section cited above does not declare what are the " other circumtances," or give any illustrations as to what such circumstances might be, we are satisfied, from a careful reading of the authorities upon this subject, that this section means what we have stated other courts have held to be the law. It merely announces the abstract principle, and we must resort to decided cases and text-books to ascertain the meaning of the words "other circumstances." We think the authorities are uniform that where there is gross inadequacy of price, any circumstances such as fraud, mistake, misapprehension, surprise, or anything else which conduces to the inadequacy of price, will be held to invalidate the sale. Thus, in Littell *v.* Zuntz, 2 Ala. 256, the court held that an epidemic of yellow fever in the city where the sale was held, which had caused the defendant to leave the city and be absent from the sale, was sufficient cause for setting the sale aside when the price was grossly inadequate. Other courts have held that a violent storm which prevented bidders from attending the sale was sufficient cause for setting aside a sale at which the amount bid was grossly inadequate. Sales have been set aside because of a grossly inadequate price in connection with misapprehension as to the time when the sale was to take place, with fraud on the part of the plaintiff, who dissuaded persons from bidding, or violated his agreement to postpone the sale, or by himself or through his attorneys misrepresented the defendant's title, with accident, with mistake, or with other irregularity which is shown to have operated injuriously against the complainant's interest. For these and other illustrations see 2 Freeman, Ex. (3d. ed.) § 308. Of course in all these cases it must appear that the party moving to set the sale aside did nothing to produce the irregularity. In the case now under consideration the plaintiff in the equitable petition seems to have been entirely free from fault. Its counsel di-

rected the sheriff not to sell at the time he did sell.   Counsel had the right to give this direction, and the sheriff should have obeyed it.   The sheriff was given good and sufficient reasons why the request was preferred.   Counsel for the plaintiff were attempting to make an arrangement whereby the defendant in execution could pay a part of the judgment and yet remain in possession of the premises if the plaintiff in execution bought in the property at the sale.   The sheriff, through mistake, misapprehension or inadvertence (perhaps induced by what Ayer said, that when he got ready to sell, to sell quickly), sold the property at a time he was directed not to sell and when the plaintiff's counsel were not present; and for this reason, the plaintiff asserts, it was possible for the purchaser to bid in the property for so small an amount.   As before remarked, the action of the sheriff injuriously affected not only the plaintiff in execution, but the defendant in execution also.   In Lawyers' Co-operative Pub. Co. *v.* Bennett, 34 Fla. 302, it appeared that the plaintiff's counsel had directed the sheriff not to sell; the sheriff left the county on a visit, leaving the execution in the hands of his deputy, without telling the latter of the instructions he had received; and the deputy sold the property for a grossly inadequate price.   The court set the sale aside, although the purchaser was a stranger and free from fault.   This case seems to be cited approvingly in 1 Freeman, Ex. § 108.

It may be argued that the section of the code which is cited above applies only to contracts for private sales ; but in *Parker* v. *Glenn,* 72 *Ga.* 637, this court held that there was no reason why the code section under discussion should not be applied to execution sales as well.   Taking all the facts together, it is manifest to us that the judge did not err in overruling the demurrers based on this ground.   See, generally, as to inadequacy of price as affecting judicial sales, 12 Enc. Pl. & Pr. 93 et seq.

But it was argued by counsel for the plaintiff in error that the court should not set aside the sale in the present case, because the purchaser had no knowledge or notice of any irregularity, and was not in any way connected with the mistake, misapprehension, or inadvertence of the sheriff.   Our Civil Code, § 5427, declares that " Courts have full power over their officers making execution sales, and whenever satisfied that a sale made under process is infected with fraud, irregularity, or error to the injury of either party, the sale

will be set aside." This section might have been properly cited in the preceding argument, but we cite it now for the purpose of showing that whoever purchases at an execution sale does so with a knowledge of this law, and when he bids a grossly inadequate price he takes the risk of having the matter brought before the court and the sale set aside for fraud, irregularity, mistake, surprise, or other· cause mentioned above. Kirkpatrick *v.* Corning, 48 N. J. Eq. 302. If on the final trial the sale should be set aside, the decree should provide for the repayment to the purchaser of the amount paid by him for the land.

*Judgment affirmed. All the Justices concurring.*