21700. FOWLER *et al. v.* FEDERAL INTERMEDIATE CREDIT BANK OF COLUMBIA.

DECIDED APRIL 29, 1932.

*J. F. Hatchett,* for plaintiff in error. *R. A. McGraw,* contra.

LUKE, J. On March 6, 1925, Mrs. Minnie Fowler and Bluford Fowler gave to Carroll Agricultural Credit Corporation their promissory note, secured by a bill of sale to certain personal property. The note was for $6,292.50, matured in ninety days, and bore interest from maturity at eight per cent. per annum. On March 8, 1925, it was duly transferred to Federal Intermediate Credit Bank of Columbia, and on November 15, 1927, the transferee proceeded to foreclose the bill of sale for an alleged balance due, of $438.80, with interest thereon amounting to $42.24. After both parties had announced closed, the court directed a verdict for the plaintiff for the full amount claimed in the foreclosure proceeding.

The gist of defendants' affidavit of illegality to the foreclosure proceeding is substantially as follows: Deponents admit that they signed said note and bill of sale, but aver that they paid said note in full by turning over the proceeds of seventy-two bales of lint cotton of the value of $8,640, and by paying plaintiff $437 in March, 1926. It is further averred that said $437 "was turned over to their agent, J. C. Booth, . . to be in full, entire, and complete settlement of said claim;" "that, besides this amount, plaintiff took out of the sum borrowed the sum of $600 which should have been placed on

said note as a credit. This sum was for stock in the said Carroll Agricultural Corporation. This said sum was never received by the said corporation, but was deducted by plaintiff; and said corporation was only an agent of plaintiff, and all sums paid by these deponents were paid to said corporation and not to said bank, with the exception of the $437 which was paid to plaintiff in full settlement above set out." "Deponents further say that if said . . bill of sale was ever transferred . . to plaintiff, it was done after said note became due, and also that said transfer was illegal and void for the reason that said corporation was only the agent of plaintiff, . . and said agent did all the collecting on said note until after January, 1926, and these deponents were never notified by any one before the same came due, or after the same became due, until after January, 1926; that plaintiff was the holder of said note, but deponents were at all times led to believe that said corporation was the holder of said note." "Deponents further say that said fi. fa. is proceeding illegally for the reason that the note . . is a bill of sale placing the title to said property levied on . . in the said Carroll Agricultural Corporation, which has never been properly transferred to said plaintiff; and for the further reason that the title to said described property has not been put back into these deponents before levy was made." The affidavit of illegality was amended by averring that the $8,640 referred to therein "was paid to one Boyd Cornwell, agent of the plaintiff in fi. fa. in the City of Atlanta, Ga. The same was turned over to the said agent by the Georgia Cotton Growers Co-operative Association, under and by virtue of an assignment made by defendants in fi. fa. to the said plaintiff in fi. fa."

The controlling question in the case is whether the court erred in directing a verdict for the plaintiff. Counsel for plaintiffs in error insists in his brief that the case should have been submitted to the jury upon two distinct theories: 1st. "That J. C. Booth was the authorized agent of defendant in error to make settlement of this claim with plaintiffs in error." 2d. "If he was not the authorized agent of defendant in error, . . the evidence showed that it had ratified his acts, and was therefore estopped from denying his authority."

Upon the trial of the case the plaintiff introduced in evidence said note and bill of sale and such other documentary evidence as

was necessary to make out a prima facie case, and rested. Bluford Fowler testified, in substance, that said note had "been fully paid by this check . . dated March 8, 1926, . . for $437.50;" that early in 1925, J. C. Booth, "who was representing the Georgia Cotton Growers Co-operative Association," told witness that if he placed the cotton he was growing that year with said association, he could get witness a loan; that witness made application for a loan through Booth, and Booth had him sign "the note and mortgage here sued;" that witness was to get $6,000, but "they took $600 for stock in the Carroll Agricultural Credit Corporation, and I never received but $5400;" that the Federal Intermediate Credit Bank would not finance witness or anybody else unless he placed his cotton with the Georgia Cotton Growers Association; that the cotton that the witness placed with said association in the fall of 1925 was worth $10,000; that in the fall of 1925, E. B. Connell, who then had said note, demanded payment thereof; that witness told Connell that if the association would transfer his cotton to Jim Williamson, he would pay the note, but that the association would not do so; that witness heard no more of the matter until the latter part of January or the first of February, 1926, when witness made application for a loan for the year 1926; that Booth said that the Intermediate Credit Bank would not finance plaintiffs in error unless they paid the balance due on the 1925 note; that since all that had been paid on said note had been paid by the Georgia Cotton Growers Co-operative Association, witness asked Booth what the balance was; that Booth said he did not know, but that he would find out, and that he thought that witness was entitled to a credit on the note for his $600 stock in said association, and that he would try to get it; that on March 8, 1926, Booth told witness that he had gotten the matter arranged so that witness would get credit for said stock, and that the balance due was $437.50; that witness then gave Booth a check for said sum in full settlement of said note; that witness "knew nothing about the other credits on the note . . unless they were paid by" said association; that after said check for $437.50 was given, the Federal Intermediate Credit Bank loaned plaintiffs in error $10,000; that out of the proceeds of his cotton witness paid off said loan and received over $600 besides; that witness never knew anything more of the 1925 note until August, 1927; that witness then went to Mr. Booth, and Booth told him that said note was paid

and that he would take the matter "up with them," and that "Booth wrote them a letter and sent" him a copy; and that all the dealings that witness ever had "in reference to borrowing money, or paying money, or getting the Federal Intermediate Credit Bank to finance" him, were through J. C. Booth.

J. C. Booth testified, in substance, that the Carroll Agricultural Credit Corporation "was financing farmers," and that those they financed "were required to sell their cotton through the Georgia Cotton Growers Co-operative Association;" that Mr. Fowler was a member of said association, and that witness represented said association as field agent in 1925, but did not represent either Carroll Agricultural Credit Corporation or Federal Intermediate Credit Bank in any capacity whatsoever; that all of said corporations were independent and distinct concerns; that witness filled out a loan application for Mr. Fowler because he was a member of Georgia Cotton Growers Co-operative Association; that witness had collected on notes due the Federal Intermediate Credit Bank, but that he did so for the benefit of the members of the Georgia Cotton Growers Co-operative Association, and was never connected with said bank in any capacity at any time; that in 1925 the Georgia Cotton Growers Co-operative Association had no "financial agent;" that when Mr. Fowler wanted his farm financed in 1926 it developed that he had not paid his note for 1925, and that "Growers Finance Company" would not finance him until said note was settled; that witness did not tell Mr. Fowler that his check for $437.50 would settle the 1925 note, or that his stock in Georgia Cotton Growers Co-operative Association would be accepted as part payment of said note, as he had no authority to do so; that witness did not tell Mr. Fowler that he thought his cotton and check would pay the 1925 note in full; that witness sent said check to his association to be turned over to Federal Intermediate Credit Bank, and that witness thought the 1925 note had been settled until Mr. Fowler came to see him in August, 1927; that witness did not have the 1925 note, did not know what payments had been made on it, and did not know what the balance due on said note was, but only knew that it was necessary for Mr. Fowler to "put up a margin of $437.50 before he could get the 1926 loan from Growers Finance Company; that witness filled out the 1925 note to the Carroll Agricultural Credit Corporation, and said corporation paid the money to Fowler, and later discounted the note

with the Federal Intermediate Credit Bank; and that in 1926 the Growers Finance Company made the loan, and that it was possible that said loan was later discounted by Federal Intermediate Credit Bank.

H. V. Harden testified: "I am a member of the Georgia Cotton Growers Co-operative Association, and have been for a good many years. I have gotten several loans through the Federal Intermediate Credit Bank of Columbia. I have been to the office quite often and gotten these loans through this bank. You always have to see Mr. E. B. Connell before this bank will agree to finance you. Everything goes through his hands to the Federal Intermediate Credit Bank. He represents them there, and was [representing them] during the years 1925 and 1926. All of the offices are on the same floor, the Georgia Cotton Growers Co-operative Association, the Growers Finance Corporation, and the Federal Intermediate Bank of Columbia, with connecting doors." (It appears from the testimony of Mr. Bluford Fowler that Mr. E. B. Connell was "the General Manager of Growers Finance Corporation," and that "his father" was "the head of Georgia Cotton Growers Co-operative Association," and that when Fowler wanted to borrow money the Connells, who had adjoining offices, would "get together.")

It appears that the proceeds of the $437.50 check were credited on said 1925 note, that there were numerous other credits on said note, that, from the credits on said note, the amount for which a verdict was directed was actually due, and that Mr. Bluford Fowler paid directly only the proceeds of said check for $437.50, and knew nothing about the other payments, which appear to have been made by Georgia Cotton Growers Co-operative Association from the proceeds of the cotton placed with it by plaintiffs in error. The first question then is: Was Mr. J. C. Booth an agent of Federal Intermediate Credit Bank, with authority to collect money and settle claims for said bank? We think this question must be answered in the negative. "Agency can not be proved by the mere declarations of a person purporting to act as agent for another; and one who deals with such a person is bound to inquire into his authority, or to take the risk of ascertaining, when it is too late, that he was not authorized to bind the alleged principal. . ." *Carter* v. *Pembroke National Bank*, 11 *Ga. App.* 479 (75 S. E. 824). While we do not think it could be fairly concluded from the record in this case that

Mr. Booth was a collecting agent for defendant in error, even if it should be conceded that it could, we are quite sure that there is nothing to authorize the conclusion that Mr. Booth was the "settling agent" for it, endowed with power to settle a note for less than its value. See *Kight* v. *Stephen Putney Shoe Co.,* 137 *Ga.* 493 (73 S. E. 740). We quote from page 495 of that decision: "An agent to collect can not accept a less sum in settlement of his principal debt, nor sell at discount his principal's claim, without authority from his principal." See also *Kaiser* v. *Hancock,* 106 *Ga.* 217 (32 S. E. 123).

It does appear from this record that Growers Finance Corporation would not make the loan in 1926 until the 1925 obligation of plaintiffs in error to Federal Intermediate Credit Bank of Columbia had been taken care of, and that after the $437.50 check had been handed to J. C. Booth the Growers Finance Corporation did make the 1926 loan, and that the papers evidencing that loan were discounted by Federal Intermediate Credit Bank of Columbia. However, we do not think that these facts, in connection with all the other facts presented by the record, estop defendant in error from denying Booth's agency to settle its claim for less than its value.

In conclusion, we hold that the evidence introduced, with all reasonable inferences and deductions therefrom, demanded the verdict which was directed, and that for no reason assigned did the trial judge commit reversible error.

*Judgment affirmed.* *Broyles, C. J., concurs.* *Bloodworth, J., absent on account of illness.*