28059. SULLIVAN *et al.,* administratrices, *v.* FEDERAL FARM MORTGAGE CORPORATION.

DECIDED MARCH 13, 1940. REHEARING DENIED MARCH 26, 1940.

*Homer C. Denton,* for plaintiffs in error.
*Weeks & Candler,* contra.

PER CURIAM. This was a suit by "the Federal Farm Mortgage Corporation, acting by and through the Land Bank Commissioner, acting under the authority of the act of Congress, approved May 12, 1933," against the administratrices of the estate of Mrs. Flora Bailey, deceased. It was alleged in the petition, that on April 26, 1934, Mrs. Flora Bailey executed and delivered to the Land Bank Commissioner the note sued on for $1540; that the maker of the note defaulted in certain payments due thereon, and the land held as security for the note was sold under foreclosure proceedings for $300, which, together with another credit of $48.18, left a balance due on the note of $1375.53 for which the suit was brought, together with interest and attorney's fees. The defendants filed a demurrer and an answer to the petition. The demurrer was to the effect: (1) That no cause of action was set out against the de-

fendants; (2) that the note sued on shows that it was not made payable to the plaintiff, nor was the plaintiff the legal holder thereof by indorsement or assignment; (3) that the plaintiff is not a party or privy to the contract, and was unable to maintain the suit. There was also motion by the defendants to dismiss the action, on the ground that the "Land Bank Commissioner" was not a legal entity and was not an agent or employee of the Federal Farm Mortgage Corporation. The court overruled the demurrer and the motion to dismiss the action.

The defendants in their answer admitted the execution of the note sued on, and set up that the attorneys for the Land Bank Commissioner who acted in placing the loan and in the foreclosure proceedings, while advertising the property for sale in the foreclosure proceedings, informed the defendants that it was not the custom of their client to seek a deficiency judgment, and told the defendants that the Land Bank Commissioner, or the plaintiff in this case, would bid the full amount of the indebtedness secured by the loan deed, and that their client was willing to accept the property in full settlement of the debt evidenced by the note here sued on, but stated that the foreclosure proceedings were necessary in order to complete the transfer of title into the Land Bank Commissioner or plaintiff in this case; that the defendants believed and relied on these statements, and did not attend the sale of the property, which sold for the ridiculously low price of $300, which was entirely inadequate in so far as the value of the property was concerned. The defendant Mrs. C. W. Sullivan, administratrix, alleged, that she accepted the proposition of the bank, through said attorneys, to bid in the property for the amount of the debt and accept the property in full settlement thereof, despite the fact that the property was worth several times the amount of the debt, she being in a delicate state of health and unable to look after the affairs of the estate, and the property being in Walker County while she resided in DeKalb County; that the attorney for the bank also informed her that it would not be necessary for either her or her husband to attend the sale, assuring her that he would bid the full amount of the indebtedness, and assured them that if the property should bring more than the amount of the debt he would pay over to her the excess; that the sum of $300 bid by the plaintiff on the property and for which it sold in said foreclo-

sure proceedings was considerably less than ten per cent. of the value of the property; that had she not believed and relied upon these statements of the bank's attorneys, she would have attended the sale and solicited prospective purchasers to attend for the purpose of bidding on the property in order that it might bring a reasonable amount, or she would have had her husband, who looked after all the affairs of the estate for her, to attend the sale; that at the time of the foreclosure sale she was sick and confined in a hospital in Atlanta, and being thus unable to attend to her affairs she agreed with the bank's attorneys to sacrifice the property for the amount of the debt, despite the fact that the property had a fair market value of more than $4000 to $5000; that the bank's appraisers placed a minimum value, on the property of $3500 before the bank made the loan in question; that the property would have brought considerably more than the amount of the debt, $1375.53, had the bank's attorneys and agents not circulated a report that the bank was going to bid the amount of the debt, with interest and all costs; that, further relying upon the statements of the bank's attorneys and their agreement to accept the property in extinguishment of the debt and of her acceptance of the offer, she considered the matter closed and made her final return to the ordinary of Walker County; that she still considers the matter closed, despite the loss she suffered in permitting the property to go for the amount only of the debt, and that she believes and has been reliably informed that the plaintiff bank has sold said property for an amount many times greater than the amount for which it bought it at the foreclosure proceedings.

The plaintiff demurred to certain paragraphs of the defendants' answer, on the ground that the matter pleaded was merely surplusage and constituted no defense to the plaintiff's claim. This demurrer was sustained, and the alleged defense as contained in the answer was stricken. The court then directed a verdict for the plaintiff, and the defendants excepted to the rulings stated above, and to the direction of the verdict.

■ The court did not err in overruling the defendants' demurrer and the motion to dismiss the action. The Federal Farm Mortgage Corporation was a legal entity, created by an act of Congress, 12 U. S. C. A. § 1020, and the suit was maintainable as it was brought. The note specifically referred to the act of 1933, and.

stated that it was made payable to the Land Bank Commissioner pursuant to the act of Congress, approved May 12, 1933, known as the Emergency Farm Mortgage act of 1933, and the note further recited that it was made subject to the terms and provisions of that act and any amendments thereto. The Farm Mortgage act of 1933 was amended by the Federal Farm Mortgage Corporation act, approved January 31, 1934, to provide that the Land Bank Commissioner shall in his own name make loans on behalf of the Federal Farm Mortgage Corporation either in cash or in bonds of the corporation. See 12 U. S. C. A. § 1016(g). It is provided in 12 U. S. C. A. § 1020 (b): "For the purpose of such capital subscription, the funds and proceeds thereof made available to the Land Bank Commissioner under section 1016 of this chapter and the. mortgages taken by the Commissioner and the credit instruments secured thereby are hereby transferred to the corporation."

This case does not present the question of agreement by an attorney to receive in payment of a claim a sum less than its value. The attorney was the agent of the creditor bank for the purpose of foreclosing the loan and exposing the property for sale. In whatever he did and said in furtherance of this he was acting within the scope of his employment and as agent for the bank. The creditor bank, in undertaking to sell the property, was necessarily acting as attorney in fact for the debtor. The creditor bank agreed to conduct the sale in a manner that would benefit the debtor, and thereby lulled the debtor into a feeling of security, and caused the debtor to believe that the bank would look after her interests and would cause the property, which was worth more than the balance due on the debt, to realize enough at the sale to pay the debt. When the debtor was thus induced to rely upon the creditor bank a confidential relationship arose between them. The bank then owed the duty to the debtor to carry out these assurances or agreements as respects the sale. When the grantor bank failed to do this, but publicly circulated a report that the bank would bid at the sale the amount of the debt, and conducted a sale under which it had the property bid in for itself and bought in by it for a small sum, considerably less than the true value of the property and considerably less than the amount due on the debt, and failed to give the debtor credit for the balance due, the bank

broke faith with the debtor. The conduct of the bank in circulating the report that it would buy in the property at the sale, and the other alleged acts of the bank, rendered the sale invalid and fraudulent. The acts of the bank in causing the sale and in buying in the property as alleged constituted a fraud against the debtor, and the sale, as respects the debtor, was a nullity and void. Where the creditor bank elected to abide by the sale and treated it as valid, by giving the debtor credit only for the amount for which the creditor bank had bought the property at the sale, when the property was in fact worth more than enough to pay the balance due on the debt, and failed to take the property in payment of the debt, or to give the debtor credit for the amount due on the debt, but sued the debtor for the alleged balance due, the bank took advantage of its fraud. The debtor, therefore, in defense to the suit can set up the fraud of the bank, in the conduct of the sale, to the debtor's damage. Where the property is in fact worth more than the balance due on the debt, the debtor's damage is at least in the amount of the alleged balance due on the debt.

It has been held in many cases, where a mortgagee fraudulently conducts a foreclosure sale by which the property, which is worth more than the debt, is sold for a sum insufficient to pay the debt, the debtor need not elect to have the sale declared void and set aside for fraud, but can, in a suit by the creditor against him for the balance of the debt, where the mortgagee creditor bought the property in at the sale and took possession of it, plead the appropriation of the property by the creditor, in full payment of the balance due on the debt. As stated by Chief Justice Shaw in Howard *v.* Ames, 44 Mass. 308, "Where property, real or personal, is conveyed by a debtor to his creditor, with a power to sell and dispose of it, and apply the proceeds to the payment of the debt, the creditor, in executing such power, becomes the trustee of the debtor, and is bound to act *bona fide,* and to adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor; like any other agent, factor, or trustee to sell. Like other trustees, he can not himself directly become the purchaser, or do the same thing through the agency of another. Downes *v.* Grazebrook, 3 Meriv. 200. The specific property, in such a case, is appropriated to the payment of the specific debt, so that the money to be realized from the sale would operate, *ipso facto,* as payment

of that debt, without any further act or agreement of the parties. If then an action is brought against the debtor for the balance of that specific debt, it seems to us that it is a good answer, to show that if the pledged property had been fairly managed, and properly sold, it would have been sufficient to pay the whole debt, and that there would have been no balance due; and that this answer shall have its legal effect as a defense to an action by the creditor to whom such mismanagement is justly imputable, and to any other person, standing in his place." In Lowell v. North, 4 Minn. 32, where the mortgagee had bought in the mortgaged property at a void foreclosure sale, for less than the debt and for a sum considerably less than the true value of the property, and the mortgagee sued the debtor for the balance alleged to be due on the debt, the court held that the debtor "may either apply to the court to have the sale set aside, or he may hold the mortgagee personally liable for the injury he has suffered by the unauthorized sale of the mortgaged property." The court further stated as follows: "In this case, he has chosen the latter remedy. The allegations of the answer constitute a good cause of action—which, under the statute, may be set up as a defense—the statement of the illegal sale; and that in consequence thereof the property sold for less than its value; and that had the sale been duly made, it would have brought sufficient to have satisfied the note, which it was given to secure. If these allegations shall be found true, they constitute a good defense to the action below." In Rohrer v. Strickland, 116 Va. 755 (82 S. E. 711), it was held: "Where a sale under a deed of trust to secure purchase-money of the property sold has been made under circumstances and at such a price as to be unconscionable, and judgment has been taken against the debtor for the deficiency in the price of the property sold, and a suit in chancery has been brought to enforce the judgment against other property of the debtor, he may by answer and cross-bill in the last-mentioned suit assail the validity of the sale under the trust deed. This is not a collateral attack on a domestic judgment, which is not permissible, but a direct attack founded upon equitable grounds for relief. Moreover, the right to make such defense is controlled by section 3300 of the Code, which provides that if a defendant fails to avail himself of the defenses given by section 3299, he shall not be precluded from such relief in equity as he would have been

entitled to if section 3299 had not been enacted." The court in that case stated, in the opinion, as follows: "In Rossett v. Fisher, 11 Gratt. (52 Va.) 492, Moncure, J., in delivering the opinion of the court, at pp. 498-499, observes: 'A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them; nor ought he to permit the urgency of the creditors to force the sale under circumstances injurious to the debtor at an inadequate price. 1 Lom. Dig. 323; Quarles v. Lacy, 4 Munf. (18 Va.) 251. He is "bound to bring the estate to the hammer," as has been said by Lord Eldon, "under every possible advantage to his *cestui que trust;*" and he should use all reasonable diligence to obtain the best price. Hill on Trustees, 479, marg. and cases cited.' Wilson v. Hall, 99 Va. 353, 38 S. E. 181. In Minor on Real Property, sec. 497, it is said, the trustee must exercise 'in all things, in respect to the *cestui que trust,* the most transparent good faith.' See authorities n. 1, also sec. 665. . . It has also frequently been held that a court of equity will grant relief where property is sold at a grossly inadequate price, and the owner has failed to attend the sale through mistake or inadvertence of himself or his agent. . . The books abound with illustrations of the principle that courts of equity will seize upon the fact of accident and surprise, coupled with gross inadequacy of price, as a justification for granting relief." See *Smith* v. *Georgia Loan & Trust Co.,* 114 *Ga.* 189 (39 S. E. 846); *Carr* v. *Graham,* 128 *Ga.* 622 (57 S. E. 875); *Croft* v. *Sorrell,* 151 *Ga.* 92 (106 S. E. 108); Bispham on Equity, §§ 210, 211; Aultman v. Meade, 121 Ky. 241 (89 S. W. 137, 123 Am. St. R. 193); Fenton v. Torrey, 133 Mass. 138; 41 C. J. 1022.

The court erred in sustaining the plaintiff's demurrer to the defendants' answer and in directing the verdict for the plaintiff.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting from division 2 of the majority opinion of the court, and from the judgment of reversal. The part of the answer stricken on demurrer consisted of allegations to the effect that the attorneys for the plaintiff, while advertising the property for sale, told the administratrix that it was not the custom of the plaintiff to seek a deficiency judgment, that their client would bid the amount of the indebtedness secured by the loan deed and was willing to accept the property for the debt, but that it was neces-

sary to foreclose in order to complete the transfer of the title into the Land Bank Commissioner or the plaintiff in this case; that she relied on these statements, etc. No special authority on the part of these attorneys was alleged. "Without special authority, attorneys can not receive anything in discharge of a client's claim but the full amount in cash." Code, § 9-606. "An attorney at law charged with the collection of a claim being a special agent for this purpose, and being expressly forbidden by law from receiving anything in discharge of a client's claim but the full amount in cash, one who undertakes to settle with an attorney an account in his hands for collection for a sum less than is due thereon must, at his peril, ascertain that the attorney is authorized to make such a compromise." *Sonnebom* v. *Moore,* 105 *Ga.* 497 (30 S. E. 947). See also *Kaiser* v. *Hancock,* 106 *Ga.* 217 (32 S. E. 123); *Pollak* v. *Niall-Herin Co.,* 137 *Ga.* 23 (72 S. E. 415, 35 L. R. A. (N. S.) 13); *Kight* v. *Stephens Putney Shoe Co.,* 137 *Ga.* 493 (2) (73 S. E. 740); *Fowler* v. *Federal Intermediate Credit Bank,* 45 *Ga. App.* 149 (164 S. E. 102); *Darden* v. *Federal Reserve Bank,* 48 *Ga. App.* 685 (173 S. E. 227). "Authority for the plaintiff's attorneys to accept in settlement of the suit a sum less than the amount sued for will not be presumed." *Johnson* v. *Starr Piano Co.,* 27 *Ga. App.* 425 (108 S. E. 811). See also *High* v. *Hollis,* 35 *Ga. App.* 195 (132 S. E. 260). There was no allegation that the foreclosure proceeding was not regular, or that the sale of the land was not held according to law, or that anything was done to suppress bidding at the sale. The answer undertakes to set up an oral agreement on the part of the attorneys for the plaintiff to the effect that their client was willing to accept the property for the debt and would bid enough at the sale to cover the defendants' indebtedness, and failure on the part of said attorneys or their client to bid the land off at enough to cover the debt. The alleged agreement on the part of the attorneys for the plaintiff was without consideration and was not binding on the plaintiff. "An agreement by a creditor to receive less than the amount of his debt can not be pleaded as an accord and satisfaction, unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration." Code, § 20-1204. No effort was made in the answer to cancel the sale on account of fraud, but the defendants con-

tend that the debt was canceled by the alleged agreement. According to the allegations of the answer, this was merely an oral executory agreement in respect to accepting the land for the debt, without delivering possession of the land, or any other consideration, and, under the facts pleaded, can not be enforced. See *Dixon v. Ernest L. Rhodes & Co.*, 44 *Ga. App.* 678 (162 S. E. 716), and cit. The authorities cited in division 2 of the majority opinion are without application to the present case as it is here presented. I am of the opinion that the judge did not err in sustaining the demurrer to the defendants' answer and in directing a verdict for the plaintiff; and therefore I dissent from the rulings in division number 2 and from the judgment of reversal.