28924. SULLIVAN, administratrix, *et al. v.* FEDERAL FARM MORTGAGE CORPORATION.

DECIDED JUNE 21, 1941.

*Homer C. Denton,* for plaintiffs in error.
*Weeks & Candler, G. Stokes Walton,* contra.

SUTTON, J. The Federal Farm Mortgage Corporation, acting by and through the Land Bank Commissioner, acting under the act of Congress approved May 12, 1933, brought suit against Mrs. C. W. Sullivan and others, as administratrices of the estate of Mrs. Flora Bailey, deceased, on a promissory note. The petition alleged that on April 26, 1934, Mrs. Flora Bailey executed and delivered

to the Land Bank Commissioner the note sued on in the amount of $1540 and defaulted in certain payments due thereon; that the land held as security for the note was sold under foreclosure proceedings on May 5, 1936, for the sum of $300, which, together with another credit of $48.18, left a balance due of $1375.53, for which the suit was brought, together with interest and attorney's fees.

The defendants admitted in their answer the execution of the note sued on, but set up that the attorneys for the Land Bank Commissioner, who acted in placing the loan and in the foreclosure proceedings, while advertising the property for sale in the foreclosure proceedings informed the defendants that it was not the custom of their client to seek a deficiency judgment, and told them that the Land Bank Commissioner would bid the full amount of the indebtedness secured by the loan deed and was willing to accept the property in full settlement of the debt evidenced by the note sued on, but stated that the foreclosure proceedings were necessary in order to complete the transfer of title into the Land Bank Commissioner or the plaintiff; that the defendants believed and relied on these statements and did not attend the sale of the property, which sold for the ridiculously low price of $300 and which was entirely inadequate in so far as the value of the property was concerned. The defendant, Mrs. C. W. Sullivan, administratrix, alleged that she accepted the proposition of the bank, through said attorneys, to bid in the property for the amount of the debt and accept the property in full settlement thereof, despite the fact that the property was worth several times the amount of the debt, she being in a delicate state of health and unable to look after the affairs of the estate, and the property being in Walker County while she resided in DeKalb County; that the attorney for the bank also informed her that it would not be necessary for her or her husband to attend the sale, assuring her that he would bid the full amount of the indebtedness, and assured them that if the property brought more than the amount of the debt he would pay over to her the excess; that the sum of $300 bid by the plaintiff on the property and for which it sold in said foreclosure proceedings was considerably less than 10 per cent. of the value of the property; that had she not believed and relied upon these statements of the bank's attorneys, she would have attended the sale and solicited prospective purchasers to attend for the purpose of bidding on the property in

order that it might bring a reasonable amount, or she would have had her husband, who looked after all the affairs of the estate for her, to attend the sale; that at the time of the foreclosure sale she was sick and confined in a hospital in Atlanta, and being thus unable to attend to her affairs she agreed with the bank's attorneys to sacrifice the property for the amount of the debt, despite the fact that the property had a fair market value of more than $4000 to $5000; that the bank's appraisers placed a minimum value of $3500 on the property before the bank made the loan in question; that the property would have brought considerably more than the amount of the debt, $1375.53, had not the bank's attorneys and agents circulated a report that the bank was going to bid the amount of the debt, with interest and all costs; that, further relying upon the statements of the bank's attorneys and their agreement to accept the property in extinguishment of the debt and of her acceptance of the offer, she considered the matter closed and made her final return to the ordinary of Walker County; that she considers the matter closed, despite the loss she suffered in permitting the property to go for the amount only of the debt, and that she believes and has been reliably informed that the plaintiff bank has sold said property for an amount many times greater than the amount for which it was bought in at the foreclosure proceedings.

The plaintiff demurred to certain paragraphs of the answer, on the ground that the matter pleaded was merely surplusage and constituted no defense to the plaintiff's action. This demurrer was sustained, and the alleged defense as contained in the answer was stricken. The court then directed a verdict for the plaintiff, and the defendants excepted to the ruling and to the direction of the verdict. In this court, to which the defendants brought the case by bill of exceptions, it was held in *Sullivan* v. *Federal Farm Mortgage Cor.*, 62 *Ga. App.* 402 (8 S. E. 2d, 126), from which the foregoing statement is taken, that a good defense was set up to the plaintiff's action, and that the trial court erred in sustaining the plaintiff's demurrer thereto and in directing a verdict for the plaintiff. In the opinion it was said: "The attorney was the agent of the creditor bank for the purpose of foreclosing the loan and exposing the property for sale. In whatever he did and said in furtherance of this he was acting within the scope of his employment and as agent for the bank. The creditor bank, in undertaking to sell the

property, was necessarily acting as attorney in fact for the debtor. The creditor bank agreed to conduct the sale in a manner that would benefit the debtor, and thereby lulled the debtor into a feeling of security, and caused the debtor to believe that the bank would look after her interests and would cause the property, which was worth more than the balance due on the debt, to realize enough at the sale to pay the debt. When the debtor was thus induced to rely upon the creditor bank a confidential relationship arose between them. The bank then owed the duty to the debtor to carry out these assurances or agreements as respects the sale. When the grantee bank failed to do this, but publicly circulated a report that the bank would bid at the sale the amount of the debt, and conducted a sale under which it had the property bid in for itself and bought in by it for a small sum, considerably less than the true value of the property and considerably less than the amount due on the debt, and failed to give the debtor credit for the balance due, the bank broke faith with the debtor. The conduct of the bank in circulating the report that it would buy in the property at the sale, and the other alleged acts of the bank, rendered the sale invalid and fraudulent. The acts of the bank in causing the sale and in buying in the property as alleged constituted a fraud against the debtor, and the sale, as respects the debtor, was a nullity and void. When the creditor bank elected to abide by the sale and treated it as valid, by giving the debtor credit only for the amount for which the creditor bank had bought the property at the sale, when the property was in fact worth more than enough to pay the balance due on the debt, and failed to take the property in payment of the debt, or to give the debtor credit for the amount due on the debt, but sued the debtor for the alleged balance due, the bank took advantage of its fraud. The debtor, therefore, in defense to the suit can set up the fraud of the bank, in the conduct of the sale, to the debtor's damage. Where the property is in fact worth more than the balance due on the debt, the debtor's damage is at least in the amount of the alleged balance due on the debt."

After that decision by this court the plaintiff amended the petition by alleging that after it purchased at foreclosure sale the land which it held as security for the note sued on, it entered into a contract on November 25, 1936, for the resale of the land for $1000, to be paid over a period of fifteen years, and after collecting $280

of the sale price it delivered, in August, 1940, a deed to the purchaser and took back a security deed for the balance of the purchase-price; that it is now of the opinion that it will be able to collect the remainder of the sale price of the land; that it is not its purpose to make a profit from the resale of the land, and in order to give the defendants the benefit of the resale it now credits the note sued on, in addition to the credits shown in the original petition, with the amount of $700 as of January 1, 1937. The case came on for trial and the defendants assumed the burden of proving the defense set up by them. It was agreed between the parties that the appraised value of the property in question, as fixed by the plaintiff's appraiser when making the loan to the defendants on April 26, 1934, was $2250.

C. W. Sullivan testified for the defendants: "I am the son-in-law of Mrs. Flora Bailey and the husband of Mrs. C. W. Sullivan, who is one of the administratrices and one of defendants in this case. Ever since my wife was appointed administratrix of this estate I acted for and on behalf and in her stead in looking after the estate of Mrs. Bailey, and handled the matter entirely on all things in connection with this loan after the death of Mrs. Bailey. I believe Mrs. Bailey died in the late summer of 1935, and some 60 to 90 days after her death and after the administratrices had been appointed we received a notice from the Land Bank that the note representing this loan was in default, and advising us that foreclosure would follow unless the loan was paid off. I had been informed that Mr. Ralph Rosser, a member of the law firm of Rosser & Shaw of LaFayette, Georgia, was the agent and attorney for the Land Bank Commissioner, so I went to see him about the matter, and I told him that under the circumstances we were not in position to pay off this debt though we would like to get the matter settled. I explained to him that my wife, as administratrix, was in a delicate condition and not able to look after the estate, and that her sister, Mrs. Rice, lived in Tennessee, and that I was employed by the Southern Bell Telephone Company and did not have time to look after the affairs of this estate. I also told him that we did not want any deficiency judgment against us or the estate. He stated to me that I need not worry about that, and that it was the custom of the Land Bank Commissioner not to seek deficiency judgments. He stated that he had handled quite a few

foreclosures under power in Walker County, and that he had never sought a deficiency judgment against the debtor. He also stated to me that he would conduct the sale, and that he would bid the full amount of the indebtedness, together with the expense of advertising, and also stated that I need not attend the sale, and that I could just forget about it. He stated that if any one else bid more than the amount of the indebtedness and expenses that such bidder would get the property. I told Mr. Rosser that even though the property was worth several times the amount of the loan that we would be willing to give the property to the Land Bank Commissioner and/or the Federal Farm Mortgage Corporation in satisfaction of the debt. He stated that they had a deed to secure the debt with power of sale, and that it would be necessary to foreclose under the power of sale so as to perfect the title. Mr. Rosser again reiterated to me that he would see that the property brought at least the full amount of the indebtedness. . . We relied upon the statements of Mr. Rosser and believed them to be true, and therefore did not attend the sale or make any effort to get bidders for the property. If we had not believed what he said to be true we certainly would have attended the sale and had some bidders there in an effort to make the property bring at least the amount of this loan. This sale was had by Mr. Rosser under power in the security deed on May 5, 1936, in Walker County, Georgia, and Mr. Rosser conducted the sale and only bid $300 on behalf of the Federal Farm Mortgage Corporation, in violation of the agreement he had made with me prior to the sale. Some weeks after said sale we were informed that the foreclosure had been made, and believing the matter was wound up the administratrices, defendants in this case, filed their application for discharge with the court of ordinary of Walker County and obtained their discharge in due course. Subsequent to obtaining said discharge we received a notice from the law firm of Rosser & Shaw, making a demand upon us for about $1300 deficiency. Being surprised and dumfounded I went again to see Mr. Rosser about it, and he did not wish to discuss the matter with me. I think the date that I first went to see Mr. Rosser about taking the property in satisfaction of the indebtedness was in the fall of 1935 or perhaps afterwards. It was some 60 or 90 days or perhaps more after the death of Mrs. Bailey. I do not remember just the date of her death. I did not talk with

Mr. Rosser any more about the matter until after the foreclosure and receipt of the notice from him or his firm making demand upon us for payment of the debt."

The defendants tendered in evidence a photostatic copy of the original contract between the Land Bank Commissioner of Columbia, South Carolina, and J. R. Rosser of LaFayette, Georgia, dated August 28, 1933, appointing the said Rosser a local correspondent for Walker County to assist eligible farmers in securing loans from the Land Bank Commissioner. The duties of a local correspondent were stated in the letter or contract, to which Rosser agreed in writing, but no reference was made to foreclosures of loan deeds. The defendants also introduced in evidence a letter dated April 4, 1936, addressed to "Messrs. Rosser & Shaw, attorneys at law," signed by Julian Webb, assistant counsel, stating that the loan made Mrs. Flora Bailey was delinquent, and that the entire indebtedness had been declared due and payable and the holder of the loan deed desired to sell the land under the power contained in the deed; expressing a desire that Rosser & Shaw handle the matter of foreclosure for a fee of $25; giving detailed instructions as to the handling of the foreclosure and furnishing certain information in a form of abstract and certain data as to taxes on the property involved, and adding that "If you think a judgment could be collected from the borrower, and that suit should be filed for the amount of the loan and attorney's fees, please defer advertising sale and furnish us with a complete report and recommendation," and "If for any reason you are not in position to handle this matter for us, please wire us collect and you will be informed what disposition we wish made of the papers." A postscript was added to the letter: "Bidding instructions will be forwarded to you prior to the date of sale." The defendants also introduced in evidence a letter, dated April 30, 1936, addressed to "Messrs. Rosser & Shaw, attorneys at law," signed by "Julian Webb, assistant counsel," stating that at the sale of the property in question it was desired that they bid, on behalf of the Federal Farm Mortgage Corporation, a maximum of $1000 in case competitive bidding required a bid of that amount.

After the defendants had rested, the court, on motion of the plaintiff, directed a verdict for it for $675.53 principal, $83.01 attorney's fees, and $154.06 interests and costs of court and future

interest at 5 per cent. per annum., and judgment was entered accordingly. The exception here is to the direction of the verdict and to the judgment.

The facts adduced at the hearing of the case were quite different from those set up as a defense in the answer of the defendants, and the ruling heretofore made is not conclusive on the right of the plaintiff to recover. The ruling on the demurrer to the answer of the defendants on the former appearance of the case before this court was based on the allegation that the attorney who made the declarations relied upon was then and there acting in the capacity of a foreclosure agent for the plaintiff, and that in what he did and said he was acting in the scope of his employment; that the creditor bank, by reason of his conduct, lulled the debtors into a false sense of security that it would subserve the defendants' interest and cause the property to be bid in for the amount of the indebtedness; that instead of doing so, and after circulating a report that it would bid in the property for such amount, thus deterring bidders, it itself bid only a small amount, considerably less than the true value of the property and the amount due on the note, and thus broke faith with the debtors and damaged them in an amount at least equal to the alleged balance. The evidence, however, shows that the conversation between the alleged agent of the plaintiff, Rosser, and the agent of the defendants took place in the fall of 1935, and that Rosser's law firm, Rosser & Shaw, had not been appointed to act in foreclosing the loan deed to the property in question until April 4, 1936. While Rosser had been appointed a "local correspondent" on August 28, 1933, the letter of appointment, the terms of which he accepted in writing, did not delegate to him any duty of foreclosure, but limited his appointment to assisting eligible farmers in securing loans. In fact, it is apparently conceded in the brief of counsel for the plaintiffs in error that, unlike the allegations of the defendants' answer, the facts show conclusively that Rosser never had any authority to represent the plaintiff in foreclosure matters until April 4, 1936, and even then was authorized to bid only to the extent of $1000. The evidence does not show that Rosser & Shaw, or anybody on behalf of the plaintiff, did anything in the way of deterring bidders or chilling the bids or made any representation to the defendants, or to any one on their behalf, that the property would be bid in for the

amount due on the note, or in any wise lulled them into a false sense of security with respect to the foreclosure of the loan deed. In these circumstances the alleged declarations of Rosser, made prior to the appointment of his law firm to act in foreclosing the loan deed, could not in law be imputed to the plaintiff so as to set up any fraud or liability on its part. "The declarations or admissions of an agent, unless part of the res gestæ, do not bind the principal, and in a suit against the principal have no probative value. Conduct of an agent, from which it is sought to imply an admission, is within the rule." *Georgia Ry. & El. Co. v. Harris,* 1 *Ga. App.* 714 (2) (57 S. E. 1076). See also *Ninth District A. & M. School* v. *Wofford Power Co.,* 37 *Ga. App.* 271 (1) (139 S. E. 916); *Claflin* v. *Ballance,* 91 *Ga.* 411, 419 (18 S. E. 309); *Atlanta Savings Bank* v. *Spencer,* 107 *Ga.* 629, 634 (5) (33 S. E. 878); *National Building Asso.* v. *Quin,* 120 *Ga.* 358 (2) (47 S. E. 962). So far as the evidence discloses the sale was fair and legal in all respects, and the trial court did not err in directing the verdict for the plaintiff and in rendering judgment accordingly.

But it is contended by the plaintiffs in error that the conversation had with Rosser, though prior to the appointment of his law firm to foreclose the loan deed, might be found by the jury to have been still within his knowledge and recollection or bosom at the time his firm was in fact authorized to act in the foreclosure proceeding, and that his promise to the defendants to bid in the property for the amount of the debt due, etc. was, under *Faircloth* v. *Taylor,* 147 *Ga.* 787 (4) (95 S. E. 689), *Bean* v. *Barron,* 176 *Ga.* 285 (2) (168 S. E. 259), and the like, binding upon the plaintiff. In the *Faircloth* case it was ruled: "The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it; provided, however, that such notice or knowledge will not be imputed: 1. Where it is such as it is the agent's duty not to disclose, and 2. Where the agent's relations to the subject-matter, or his previous conduct, render it uncertain that he will not disclose it, and 3. Where the person claiming the benefit of the notice, or those whom

he represents, colluded with the agent to cheat or defraud the principal." The principle ruled in the above cases does not require any ruling different from that here made. Assuming that what took place between Rosser and the defendants in 1935, prior to his firm's appointment as a foreclosing agent in 1936, could be imputed as knowledge to the plaintiff, such knowledge would amount to no more than the fact that a "local correspondent," without necessary authority, was purporting to inform the debtors that they need not attend the threatened foreclosure sale and that he would bid in the property for the amount of the indebtedness. Even if Rosser had directly informed the plaintiff, after his firm had been appointed a foreclosure agent, that he had made such declarations to the defendants, the plaintiff would not have been under any obligation to carry out such unauthorized promises. "'By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agents to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown.' *Merck* v. *American Freehold etc. Co.*, 79 *Ga.* 213 (2) (7 S. E. 265). See also *Bellerby* v. *Goodwyn*, 112 *Ga.* 306 (37 S. E. 376); *McCall* v. *Herring*, 118 *Ga.* 522 (3) (45 S. E. 442); 39 Cyc. 982." *Equitable Life Assurance Society* v. *Cochran*, 170 *Ga.* 270 (152 S. E. 248); *Griffith* v. *Federal Land Bank*, 190 *Ga.* 578, 580 (10 S. E. 2d, 71). The defendants did not claim that by any act or conduct the plaintiff had ratified the promises of the "local correspondent," and nothing is shown by the record amounting to ratification. On the contrary it is not apparent that the plaintiff, until the foreclosure sale had been completed, knew of any such conversation between Rosser and the defendants. There is no evidence of any unfair or illegal sale or chilling, or that the property did not bring its full value. It appears, however, that the plaintiff, after it was able to resell the property on long deferred terms, voluntarily allowed the defendants an additional credit of $700 on the note sued on, thus reducing the balance of indebtedness to $675.53, because of the fact that it did not wish to make, as it alleged, a profit on the transaction. The verdict directed was for this amount, attorney's fees,

cost, and interest, and was demanded as a matter of law under all the evidence.

*Judgment affirmed. Felton, J., concurs. Stephens, P. J., dissents.*

STEPHENS, P. J., dissenting. If the agent of the plaintiff conducting the sale stated to the defendants, as it appears from the uncontradicted evidence (the agent not having testified or denied the defendants' testimony), that the plaintiff would bid in the property for its value and not seek a deficiency judgment against the defendants, and the defendants relied upon this as alleged in their plea, as testified to by them, and if the agent when making the statements alleged was agent for the plaintiff and acting within the scope of his authority, the sale would be void as between the plaintiff and the defendants, as was held in this case, in passing on demurrer, in *Sullivan* v. *Federal Farm Mortgage Corporation, 62 Ga. App.* 402, supra. If the sale was void as between the plaintiff and the defendants the purchase of the property by the plaintiff at the sale and its sale by the plaintiff to another amounted to a rescission of the contract, and released the defendants from further liability to the plaintiff on the notes given for the purchase-money of the property.

It is stated that when the plaintiff's agent made the alleged statement to the defendants with reference to the plaintiff's buying in the property and taking it in payment of the debt etc., he was not at the time agent for the plaintiff for the purpose of foreclosing the loan and conducting the sale, and that therefore in making the statements he was not acting as the authorized agent of the plaintiff and the plaintiff would not be bound thereby. Conceding that the agent at the time of making such statements was not the agent of the plaintiff to conduct the sale, he afterwards became the agent of the plaintiff to conduct the sale, and did conduct it as such agent, and conducted it after he had made the representations referred to to the defendants. It is immaterial whether the agent made these representations before he became in fact the agent or afterwards. The sale was conducted under such representations by him to the defendants. The effect of the representations when made by the agent, although they were made before the agency began, were continuing, and were in effect being made by him during the entire period from the time when he first

uttered them until he conducted the sale. Such representations were in effect being made by him after his agency began. Such representations therefore were being made by the plaintiff through him at the time of the sale, and were binding upon the plaintiff.

I am of the opinion that the evidence demanded a verdict for the defendants, and that the court erred in directing the verdict for the plaintiff.