## STRASNER v. CARROLL.

### Opinion delivered July 10, 1916.

STATUTE OF FRAUDS—ORAL AGREEMENT TO PURCHASE LANDS FOR ANOTHER —RULE— EXCEPTION TO THE RULE.—The rule that a mere verbal agreement by which one party thereto promises to buy in at a judicial sale, lands of the other party, and to hold the same for his benefit, does not create a constructive trust, the agreement being within the statute of frauds, is subject to the exception that where the purchaser buys the lands of another, under such a state of facts as would make it a fraud to permit him to hold on to his bargain, a trust will be raised.

Appeal from Pike Chancery Court; *Jas. D. Shaver,* Chancellor; reversed.

*W. C. Rodgers,* for appellant.

The transaction is, in equity, at least, a mortgage. Certainly it was not intended as a *sale.* 13 Ark. 112-117; 96 U. S. 332; 13 Ark. 112-117, 118; 2 J. J. Marsh. 471; 1 Jones on Mortg., § 162, 167, 168. Once impressed with the character of a mortgage, it must so remain. 3 Pom. Eq. (3 ed.), § 1193.

A court of equity will always relieve the mortgagor from the consequences of his failure to perform the condition. 129 Ill. 72; 2 Jones on Mortg., § 1039. An equity of redemption is inseparably connected with a mortgage— the right can not be waived. 96 U. S. 332.

*Langley & Steel,* for appellee.

1. To constitute an equitable mortgage, there must be some kind of a conveyance by the grantor to the gran-

tee for the purpose of securing an indebtedness. 5 Ark. 321; 3 *Id.* 364; 75 *Id.* 551; 37 *Id.* 308; 38 *Id.* 264. The deed here was absolute and the burden was on appellant to show that it was intended as a mortgage. 19 Ark. 278; 31 *Id.* 163; 40 *Id.* 146.

2. The findings of the chancellor will not be disturbed unless clearly against the preponderance of the testimony. 100 Ark. 166.

HART, J. M. L. Carroll instituted an action of ejectment in the circuit court against T. J. Strasner to recover 220 acres of land in Pike County, Arkansas. Strasner filed an answer and cross-complaint and set up substantially the following state of facts:

He owned 300 acres of land in Pike County upon which he resided and mortgaged the same to a bank in Pike County to secure the sum of $600 which he owed the bank. The debt of the bank fell due in 1914 and Strasner, failing to make payment, the bank proceeded to foreclose the mortgage. The land was worth much more than the mortgage debt, and in order to prevent a sacrifice of the land it was agreed that Carroll should purchase the land at the foreclosure sale for the amount of the indebtedness due the bank by Strasner and hold the title to the land in trust for the latter until he could repay Carroll the amount bid for the land. Two friends of Strasner were to sign the note for the purchase money given by Carroll as surety, and did so. Carroll became the purchaser at the sale, and the sale was confirmed and a deed executed to him by the commissioner who made the sale. Strasner tendered to Carroll the amount of the debt, principal and interest and requested Carroll to make a deed conveying back to him the land purchased by Carroll at the foreclosure sale. Carroll refused to do this.

The prayer of the answer and cross-complaint of Strasner are that he be permitted to redeem the land, and that the claim of Carroll be cancelled as a cloud upon his title.

Carroll filed an answer to the cross-complaint in which he denied that he purchased the land at the fore-

closure sale for Strasner and agreed to hold the same in trust for him. He stated that he purchased the land for himself at the foreclosure sale, but agreed to resell it to Strasner within ninety days if the latter should pay him the amount which he had bid for the land; that Strasner failed to make the payment, and that the sale was confirmed in himself by the chancery court. On motion the case was transferred to the chancery court. The chancellor found the issues of fact in favor of Carroll, and held that he was the owner of the land and entitled to the possession thereof. A decree was entered accordingly and Strasner has appealed to this court. The material facts are as follows:

Strasner owned 300 acres of land in Pike County upon which he resided. He executed a mortgage to the bank to secure an indebtedness due it of $600. The bank instituted foreclosure proceedings and obtained a foreclosure decree in the chancery court.

According to the testimony of Strasner, M. L. Carroll, J. C. Couch and Isaac Webb, who were his friends and neighbors, agreed to purchase the land at the foreclosure sale for the amount of the debt due the bank and to hold same in trust for him until he could pay the amount of the indebtedness, principal and interest. Pursuant to this agreement, Carroll became the purchaser of 220 acres of the land at the foreclosure sale for the sum of $635, being the amount due on the mortgage debt. Carroll gave his note to the commissioner making the sale, for the purchase money and Couch and Webb signed it as his sureties.

Strasner resided on the lands and was getting out stave bolts and paying a part of the proceeds arising from the sale of them to Carroll to be credited on the mortgage indebtedness. This was pursuant to the agreement he had made with Carroll in the beginning; that ninety days after the land was bid in by Carroll, he had paid to him $140 from the proceeds of the sale of stave bolts. The value of the land bid in by Carroll was variously estimated by the witnesses from seven to ten dollars per acre. Most of the witnesses placed its value at ten dollars per acre.

Couch and Webb corroborated the testimony of Strasner as above abstracted.

In addition, Strasner testified that if the agreement had not been made with Carroll, who purchased the land, that he had another friend who had the money to buy the land, and who would have loaned him the money for that purpose. He also testified that after he made the agreement with Carroll, he did not try to secure any further bidders, and that it was generally known that the lands were being bid to be held in trust for him.

J. C. Cornish stated that he came to Murfreesboro with the intention of bidding at the sale, but came a day too soon, by mistake, that he had a talk with Mr. Carroll about the sale, and asked him if it was going to be sold in bulk or by forties; that Carroll told him that he thought that he and Strasner had the matter fixed up. Cornish then left and did not stay to the sale.

Two other witnesses testified that Carroll gave Cornish to understand that the matter had been arranged.

M. L. Carroll testified in his own behalf. He denied that he entered into an agreement whereby he was to become the purchaser of the land at the foreclosure sale, and hold the same in trust for Strasner. He said that the court would convene about ninety days after the day of sale, and that the sale would then come up for confirmation; that he agreed with Strasner that he would resell the land to him if he would pay him the amount he had bid for the land within ninety days; that if Strasner repurchased the land, the amount derived from the sale of stave bolts was to be credited on the purchase price, but that if Strasner failed to repurchase the land within ninety days, that the amount derived from the sale of stave bolts should be retained by him because he owned the land.

We think the clear preponderance of the evidence shows that Carroll agreed with Strasner to purchase the land at the foreclosure sale and take the title in his own name upon a verbal agreement to hold it for the benefit of Strasner. Of course, the testimony of Carroll shows that the agreement was for a resale by him to Strasner

upon certain conditions which were not complied with by Strasner. His testimony however, is contradicted by Strasner, and Strasner is corroborated by Couch and Webb. So we think a clear preponderance of the evidence shows a parol agreement on the part of Carroll to purchase the land at the foreclosure sale, hold it in trust for Strasner and to convey it back to Strasner on repayment of the purchase money, and that he afterward refused to do so. Even under this State of facts, it is contended by counsel for Carroll that the agreement being a verbal one, was within the statute of frauds, and not enforceable as a trust in equity. It is true the general rule is that a mere verbal agreement by which one of the parties thereto promises to buy in at a judicial sale, lands of the other and hold the same for his benefit, does not create a resulting or implied trust, the agreement itself being within the statute of frauds. There are, however, several well recognized exceptions to the rule, and one of them is that where the purchaser of lands in which the other is interested becomes such under such a state of facts as would make it a fraud to permit him to hold on to his bargain. *Trapnall* v. *Brown*, 19 Ark. 39; *McNeil* v. *Gates*, 41 Ark. 264; *LaCotts* v. *LaCotts*, 109 Ark. 335. In the first two mentioned cases the principle is announced that it would be a fraud in a purchaser, who obtained property at a price greatly below its value by means of a verbal agreement, to keep the property in violation of the agreement.

In the instant case, the evidence shows that the land was bid in for $635, and the proceeds arising from the sale of the stave bolts amounting to $40 was credited thereon. The evidence shows that the lands were worth much more than the amount bid for them by Carroll. It also shows that Strasner relied upon the promise of Carroll to bid in the property for his benefit and relaxed his efforts to borrow the money from some one else, and thus prevent a sacrifice of his land. Strasner stated that he had another friend from whom he could have borrowed the money. He also stated that he relaxed his efforts to secure other bidders because of the agreement made with

Carroll. It is also shown by the evidence that another bidder who was able to purchase the land, came to Murfreesboro for the purpose of attending the sale and bidding thereat. He refrained from bidding because Carroll told him that an understanding or agreement had been reached between him and Strasner about the land.

In the case of *Slowey* v. *McMurray*, 27 Mo., at page 118, the court, in discussing this question, said: "There is another class of cases growing out of the conduct of debtors and purchasers at public sales. This is where the purchaser becomes such under a state of facts as would make it a fraud to permit him to hold on to his bargain. As if a purchaser, by means of a promise to reconvey to his debtor, should induce a relaxation of the efforts on his part to prevent a sacrifice of his property, and thereby obtain it at an under price, or, if the purchaser, taking advantage of that reluctance invariably manifested by those attending public sales to interfere with any arrangement a debtor makes to save his property, should create an impression that he was buying for the debtor, thereby preventing competition, or by any other improper means obtain the property of a debtor at a sacrifice, such conduct would convert the purchaser into a trustee for the benefit of those who were defrauded by his conduct. Such cases go upon the ground of fraud, and courts will give relief without regard to the circumstance whether the agreement was a written or a verbal one, or whether it was supported by a consideration or not. Such are the cases of *Rose* v. *Bates*, 12 Mo. 30; *Estill* v. *Miller & Estill*, 3 Bibb. 177." See, also, *Leahey* v. *Witte*, (Mo)., 27 S. W. 402. The same rule applies where the promisee relaxed his efforts to save the property from being sold at the judicial sale. *Arnold* v. *Cord*, 16 Ind. 177; *Lillard* v. *Casey*, 2 Bibb (Ky.) 459. As bearing on the subject as sustaining the rule where the facts warrant it, see *Patrick* v. *Kirkland*, 53 Fla. 768, 12 A. & E. Ann. Cas. 540, and note; *Carr* v. *Craig* (Iowa), 116 N. W. 720, and case note to 5 A. & E. Ann. Cas. at page 173; Perry on Trusts (4 ed.), vol. 1, sec. 215, and *Ryan* v. *Dox*, 34 N. Y. 307.

From the views we have expressed, it follows that the decree should be reversed and the cause remanded with directions to permit Strasner to redeem the land, and have further proceedings in accordance with the views expressed in this opinion.