TRIPLETT et al. *v.* BRIDGFORTH et al.

In Banc.   Feb. 14, 1949.

(38  So.  (2d)  756)

330

**E. L. Shelton** and **L. F. Easterling**, for appellants.

**L. Barrett Jones,** for appellees.

338

**Hall, J.**

Sam Triplett and others, alleging themselves to be the sole heirs at law of Edie Beamon, deceased, filed a bill of complaint against Edwin B. Bridgforth, R. M. Bridgforth, C. V. Maxwell, Pat M. Barrett, Trustee, Winnifred Elizabeth McMillin, J. D. Wallace, G. D. Hunt, E. R. Whitaker and H. A. Fleishman, praying that a trustee's sale under a deed of trust on approximately 245 acres of land in Holmes County, be declared void, and, in the alternative, that the defendants be held to be trustees holding the legal title thereto for the benefit of complainants and for an accounting between the parties. A demurrer was sustained to the original bill, and thereupon the complainants, by leave of the court, filed an amended bill of complaint. The defendants filed separate general demurrers to this amended bill, which were likewise sustained by the Chancellor, and, the complainants having declined to plead further, the amended bill was dismissed. From that action the complainants appeal.

In approaching the points raised by appellants, let it be remembered that for the time being and for all purposes of the argument of the test of the law presented by the demurrers they admit all material facts which are well pleaded in the bill. Griffith's Chancery Practice, Sec. 288. Let it also be remembered that if there be sufficient equity on the fact of the bill to require an investigation of the facts, a demurrer should be overruled. Griffith's Chancery Practice, Sec. 291, Gully v. Bridges, 170 Miss. 891, 156 So. 511.

The amended bill is rather lengthy and we shall summarize only those allegations which bear directly upon the points herein decided or which are necessary to an understanding thereof. It charges that complainants are the owners of the lands in suit; that said lands were

conveyed on November 18, 1911, by Capt. W. R. Bridgforth, father of defendant R. M. Bridgforth, to Edie Beamon for a consideration of $700 cash and four notes aggregating $1800; that at said time Edie Beamon and two of her sons, Willie Triplett and Sam Triplett, were in possession of said land and were cultivating the same, having rented it from Capt. W. R. Bridgforth for many years prior thereto; that on December 11, 1915, Edie Beamon reconveyed the land to Capt. Bridgforth in consideration of a cancellation of the indebtedness owing to him; that thereafter on January 2, 1926, Capt. Bridgforth again conveyed the said land to Edie Beamon in consideration of five notes for $500 each, due consecutively over a period of five years and secured by a deed of trust thereon; that successive deeds of trust were thereafter given to Capt. Bridgforth by Edie Beamon on December 3, 1926, December 1, 1931, and December 22, 1933, the last being for $1397.70; that in 1935 Capt. Bridgforth assisted Edie Beamon in consummating two loans on the property, one being from The Federal Land Bank for $1100 and the other being to the Land Bank Commissioner for $800, for which she gave first and second deeds of trust, respectively, on the lands in suit, and out of the proceeds of these loans Capt. Bridgforth was paid the balance due him by Edie Beamon, and he cancelled of record the deeds of trust held by him and executed another deed to Edie Beamon correcting a defect in the description contained in his former deed of January 2, 1926; that Edie Beamon died intestate on January 1, 1939, leaving the complainants as her sole and only heirs at law.

The amended bill alleges that in 1940 there was considerable oil activity in that section, that in April and May 1940 certain of the complainants executed oil, gas and mineral leases on these lands which were assigned shortly afterward to the defendant J. D. Wallace; that on July 13, 1940, said Wallace purchased and obtained assignments unto himself of the aforementioned deeds of

trust held by The Federal Land Bank and Land Bank Commissioner and at about the same time came to the home of complainant, Willie Triplett, who was then residing on said lands, and informed Triplett that he, Wallace, had purchased said notes and securities, that all he wanted was interest on his money, and that he would permit Triplett to liquidate the indebtedness by payments of $100 per year; that the agents of Wallace had talked with Triplett shortly prior thereto and had also assured Triplett that Wallace would permit him to retire the indebtedness by easy payments, and further that Wallace desired another oil, gas and mineral lease on the lands, and that Willie Triplett agreed to execute the same, and did thereafter execute the same to Wallace in consideration of the extension of the indebtedness; that said sum of $100 was paid each year thereafter up to and including the year 1944.

The amended bill further alleges that in 1945 the defendant H. A. Fleishman proposed to drill an oil well near said land, and that the value of mineral rights therein increased considerably; that because of this activity the defendant Wallace, in violation of said agreement and at a time when none of said indebtedness was in default or arrears, called upon defendant Pat M. Barrett, Trustee, to foreclose the deed of trust which was originally given to Land Bank Commissioner, and accordingly the said trustee proceeded to advertise said land for sale to be held on June 18, 1945; that Willie Triplett, while knowing that said indebtedness was not in default, applied to another party with ample financial means for a loan to take up the entire indebtedness owing to Wallace, and this friend agreed to go with him on Friday before the sale was to be held on Monday and to pay off Wallace in full and take an assignment of the indebtedness and securities.

The amended bill further alleges that defendant R. M. Bridgforth then same to the home of complainant, Willie Triplett, and told him that the land was being

advertised for sale, and that Triplett then told Mr. Bridgforth that he had already arranged to have a friend take up the indebtedness and thereupon the said R. M. Bridgforth asserted that he was a friend of complainants and wanted to help them, and that his son Edwin B. Bridgforth had several oil wells and was getting a large amount of money every month and had more money than he knew what to do with and that he would like to lend it out for interest, and that he, R. M. Bridgforth, would lend for his said son enough money at 6% interest to secure a transfer of the indebtedness from Wallace, and insisted that complainants allow him to lend the money for his said son; that said R. M. Bridgforth represented himself to be a friend of Willie Triplett and expressed a desire to assist him and protect him against the foreclosure, and then and there agreed that he would get the necessary money and go with Willie Triplett on Friday before the sale and take up the indebtedness to Wallace and take an assignment from Wallace.

The amended bill further alleges that on the appointed day Willie Triplett waited at his home all the morning and R. M. Bridgforth did not come as agreed upon, and he thereupon became uneasy and in the afternoon of the same day he went to the home of R. M. Bridgforth to see why he had not come as agreed upon, and he then found said Bridgforth sick in bed, but Mr. Bridgforth had him come into the sick room and told him that he was physically unable to go and take up the indebtedness and would not be able to go on the next day, but that Triplett need not worry, that he, R. M. Bridgforth, had made arrangements for someone else to be at the sale and if unable to get an assignment from Wallace that this party would go ahead and bid in the property at the sale so as to protect complainants' interest and his interest to the amount of the money that he was advancing and that complainants could thereafter give him a deed of trust to secure the same and agreed that he would convey the property to complainants, but in the meantime would

take the deed as security for the amount necessary to purchase at the sale, and said R. M. Bridgforth assured Triplett that if he should be unable to get to the sale that Triplett need not worry and that he, Bridgforth, would have some representative present with the money to carry out his agreement; that Willie Triplett went to the place of sale on the date advertised and was unable to find Mr. Bridgforth, that Bridgforth had not been there that day, and thereupon, prior to the sale, Triplett went to the home of Mr. Bridgforth at another town several miles away, and Bridgforth was not at home and could not be found, and it was then too late for Triplett to get back to the place of sale in time to stop it.

The amended bill further charges that complainants relied upon and had implicit confidence in R. M. Bridgforth, that if Bridgforth had not agreed to advance the money to take up the indebtedness to Wallace and had not agreed to represent and protect complainants' interest in case he could not purchase the notes and deeds of trust by buying in the property or having someone present to buy it in for complainants and taking the deed in his name as security for the amount of money advanced, complainant was able financially to prevent and could have prevented the foreclosure sale in question; that Willie Triplett wholly relied upon the promises and agreements of the said R. M. Bridgforth and was thereby prevented by said Bridgforth from preventing the foreclosure.

The amended bill further charges that at said time there was a big demand for oil, gas and mineral lease rights under the lands in controversy and surrounding lands, and that R. M. Bridgforth was interested therein and conceived the idea of misleading complainants and bidding on the same and securing it in order to lease it to H. H. Fleishman who was to drill an oil well in that area; that said Bridgforth, prior to the foreclosure sale, had already arranged to lease said property to said Fleishman for the sum of $5,000, and that said R. M.

Bridgforth procured the defendant C. V. Maxwell to appear at the foreclosure sale and to purchase the property thereat, with the understanding that R. M. Bridgforth would put up the necessary money and that the title would be taken in the name of the defendant Maxwell, and that under said agreement said Maxwell was to transfer to defendant Edwin B. Bridgforth, son of R. M. Bridgforth, a one-half interest in the land and one-half of what they secured for the oil, gas and mineral lease and mineral rights under said land, and that pursuant to said confederation and conspiracy the said R. M. Bridgforth did not attend the sale but had the said C. V. Maxwell to appear and bid in the property for said R. M. Bridgforth under the aforesaid agreement and understanding; that at the foreclosure sale the said C. V. Maxwell did appear and became the highest bidder for the sum of $4200, pursuant to said alleged agreement and understanding, and a trustee's deed was executed by defendant Pat M. Barrett, Trustee, to said C. V. Maxwell; that some days thereafter the defendant R. M. Bridgforth came to the home of Willie Triplett and stated to him that he and Mr. C. V. Maxwell had bought in the property at the trustee's sale and were claiming it as their own, and asked him to point out the lines and advised him that he, Bridgforth, and C. V. Maxwell were going to divide the property between themselves.

The amended bill charges that two days after the sale C. V. Maxwell executed an oil, gas and mineral lease on the land in question for a cash consideration of $5,000, and within less than a month sold to defendants Hunt and Whitaker an undivided 50/239ths mineral interest for a cash consideration of $1000, and on July 19, 1945, C. V. Maxwell conveyed to Edwin B. Bridgforth an undivided one-half interest in the lands and an undivided one-half interest in the mineral rights remaining after the sale to Hunt and Whitaker, and on July 27, 1945, C. V. Maxwell conveyed to defendant Winnifred Elizabeth McMillin an undivided 25/239ths interest in the

minerals in said land for a cash consideration of $500, and that all of said parties had knowledge and notice of the said facts.

The amended bill further charges that the conveyances from Maxwell to Edwin B. Bridgforth were made for the benefit of R. M. Bridgforth; that R. M. Bridgforth is now claiming and asserting a claim to an undivided one-half interest in the land, and is attempting to collect rent from Willie Triplett for the year 1945, and that R. M. Bridgforth and Maxwell have given him notice to vacate the property and are preventing him from disposing of his crops.

It is alleged that the attempted sale is void because the deed of trust had not been properly assigned from Land Bank Commissioner to J. D. Wallace, and further that J. D. Wallace was precluded from foreclosing the same because of his above mentioned agreement with Willie Triplett; also that the sale is void because it was made before there was any default in the payment of said indebtedness to Wallace, and that even if there had been no agreement with Wallace the debt was still not due at the time of foreclosure.

Copies of a great many of the above mentioned conveyances, including a copy of the deed of trust to Land Bank Commissioner, are attached as exhibits to the amended bill.

Three points are raised by appellants which we feel should be disposed of at the outset.

It is argued that the deed of trust which was foreclosed by the trustee is so ambiguous as to when the indebtedness is due that it should first be reformed or a foreclosure there of had by an original proceeding in the chancery court. The note is set out in full in the body of the deed of trust. It contains the usual promise to pay the principal sum of $800 with interest thereon at the rate of 5% per annum, the interest to be payable annually on the first day in November of each year, and "said principal sum being payable on an amortization plan, in 10 equal

successive annual installments of $80.00 each, the first such installment being payable on the 1st day of November —, and the remaining installments being payable on each succeeding interest payment date to and including the 1st day of November 1947." It is argued that since the note does not recite in what year the first payment of principal is due, it is so ambiguous that it is impossible to ascertain in what year the first payment of principal should be made. ■■ While it is true that in preparing the deed of trust the note, as copied therein, does not specifically state in what year the first payment of principal is due, and through apparent inadvertence the year was omitted, still the note does provide that the principal is payable in 10 equal *successive* annual installments, the last of which shall fall due on November 1, 1947. It is thus plainly apparent that since the last payment is due November 1, 1947, and since the note is payable in ten equal successive annual installments, the first installment of principal must have been due on November 1, 1938. We therefore find that there is no such ambiguity in the note as to require its reformation or as to require a foreclosure by a proceeding in Chancery.

It is also contended by appellants that the amount bid at the foreclosure sale is so inadequate as to vitiate the sale. The amount of the bid was $4200 and the sale was made subject to the first deed of trust given originally to The Federal Land Bank. According to the exhibits to the amended bill there was due on this first deed of trust at the time of assignment to Wallace the sum of $992.04. The total bid, therefore, was for an amount around $5100 to $5200. The amended bill alleges that the property at that time was worth $10,000. ■■ Thus it is seen that the property brought a little more than 50% of its value. In the case of Weyburn v. Watkins, 90 Miss. 728, 44 So. 145, this Court held that a sale of land made by a trustee in foreclosing a deed of trust, where the property brought 40% of its true value, would not be set aside for mere inadequacy of price, if the sale was

otherwise valid. We therefore hold that the amount bid at the sale in this case was sufficient and that the sale should not be set aside on that ground alone. However, inadequacy of price may be taken into consideration along with other inequities in determining whether such a sale should be set aside, as will be seen later in this opinion.

It is argued by appellants that the assignment by Federal Farm Mortgage Corporation to J. D. Wallace of the note and deed of trust in favor of Land Bank Commissioner is ineffective to transfer to Wallace any rights therein. These instruments are attached as exhibits to the amended bill of complaint and they show that both the note and the deed of trust are in favor of "Land Bank Commissioner, acting pursuant to Part 3 of the Act of Congress known as the 'Emergency Farm Mortgage Act of 1933' " and in addition thereto paragraph 6 of the deed of trust provides that this instrument and the loan it secures is subject, in all respects, to the provisions of said Act and any amendments and supplements thereto. Land Bank Commissioner was created by an Act of Congress and is a creature of the Federal Government. 12 U. S. C. A., sec. 1016. Subsequently Congress created Federal Farm Mortgage Corporation and provided for a capital subscription thereto and then provided that for the purpose of such capital subscription, the funds and proceeds thereof made available to Land Bank Commissioner and the mortgages taken by the Commissioner and the credit instruments secured thereby are hereby transferred to Federal Farm Mortgage Corporation. 12 U. S. C. A., sec. 1020b. By this Act the note and deed of trust in favor of Land Bank Commissioner became the property of Federal Farm Mortgage Corporation, and that corporation had the right to transfer and assign the note and deed of trust to J. D. Wallace. Therefore we find no merit in this contention of appellants. Sullivan v. Federal Farm Mortgage Corporation, 62 Ga. App. 402, 8 S. E. (2d) 126.

In a written opinion oppearing in the record here the Chancellor held that there was not a sufficient consideration for the alleged agreement on the part of Wallace to the effect that he would reduce the payments on the deed of trust and notes to $100 per year provided he should be granted an oil, gas and mineral lease on the lands. ██ ██ It is charged in the amended bill that such an agreement was made, and in support of this charge there is attached as an exhibit a copy of an oil, gas and mineral lease from Willie Triplett to J. D. Wallace. We are of the opinion that this was a sufficient consideration for the alleged extension agreement and that this feature of the case falls squarely within the rule announced in Martin v. Dixie Planing Mill, 199 Miss. 455, 24 So. (2d) 332, and the authorities therein cited. ██ ██ The amended bill charges that pursuant to this agreement the appellants paid the sum of $100 each year on the indebtedness to Wallace up to the time of the. foreclosure, and that by reason thereof they were not in default or arrears at the time of the foreclosure. If these allegations be true, as the demurrers admit, the trustee had no authority to proceed with the foreclosure and the amended bill states a case for equitable relief. For this reason we find that the Chancellor erred in sustaining the demurrers. ·

██ ██ Aside from the alleged extension agreement, the amended bill further charges that the complainants were entitled to certain additional credits on the indebtedness, particularly for the delay rentals on the oil, gas and mineral lease, and that, when given credit for these items along with the annual cash payments of $100.00, there was nothing in arrears at the time of the foreclosure. By these averments there was also stated a case for equitable relief, and the complainants should have been permitted to offer their proof in support thereof, and should not have been foreclosed from so doing by sustaining the demurrers.

Finally, the appellants contend that under the allegations of their amended bill there is stated a case which creates an implied trust in their favor. Because of this contention we have heretofore stated at considerable length the charges of the amended bill. In his written opinion the Chancellor held that the case stated is within the statute of frauds, Section 269, Mississippi Code of 1942, and that it is controlled by the decision in Miazza v. Yerger, 53 Miss. 135. The appellees rely wholly upon the Chancellor's opinion but it is our conclusion that the same is clearly erroneous. The first portion of the cited section of the statute of frauds requires all declarations or creations of trust to be in writing and signed, but the latter portion modifies or qualifies the first portion by providing "but where any trust shall arise or result, by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed." Pursuant to this section of our statute of frauds the courts in this state have consistently held that express trusts are void unless reduced to writing and signed, but that resulting trusts or implied trusts are not required to be in writing but may be established by parol testimony from the acts of the parties, and we are of the opinion that this case, under the allegations of the amended bill, falls squarely within the latter class. Miazza v Yerger, supra, is clearly a case coming under the first class, but the opinion therein recognizes resulting or implied trusts when it says "Parol evidence is admissible to prove the transaction out of which a trust arises by the acts of a party," and that "no one can hold a benefit acquired by fraud or a breach of his duty." In that case Mrs. Miazza did not hold the fee simple title to the land as did the complainants in the case at bar; in that case there was not involved any fraud of Yerger in causing Mrs. Miazza to relax her efforts to raise the money with which to purchase the land; in fact she had her arrangements made with one Helm to advance

her the money with which to purchase, but Yerger, in purchasing at the sale, did not use the money which Helm was to advance but, instead, used his own money; in that case there was not involved any inadequacy of consideration coupled with the other acts of the purchasing party in obtaining title in his own name. Other distinctions between this case and the Miazza case will appear from a discussion of the authorities under which ▮▮ ▮▮ we hold that the amended bill stated a good cause of action for creation of an implied trust.

In Suggins v. Heard, 31 Miss. 426, this Court said: "It is not now an open question, that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding and will be enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution, and thus preventing a sale of his property. It will not do to say that the party promising was moved merely by friendly or benevolent considerations, and may, therefore, at his option, decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust, and the trustee should be held to account as nearly as possible in the same spirit in which he originally contracted."

The facts in this case are quite similar to those in Elmslie v. Mayor, Miss., 35 So. 201, 202 (not reported in the State Reports), wherein this Court said: "Joined to the gross inadequacy of consideration are so many circumstances indicating surprise, unfairness, and undue advantage taken of appellant that a court of conscience should not permit this sale to stand."

This case is also similar in many aspects to Wilson v. Hoffman, 104 Miss. 743, 61 So. 699, wherein it was held (syllabus): "Where plaintiffs, who had given a deed of trust upon their land which was about to be foreclosed, approached defendant, who agreed to advance the money

necessary to save the land, and who accordingly purchased the land at the foreclosure sale, and took the deed to himself and paid the amount of the indebtedness, in such case while defendant acquired the legal title to the land he held it subject to a resulting trust.''

Identically the same situation was shown in the case of Comfort v. Winters, 108 Miss. 330, 66 So. 532, where the court again followed the same rule and where the syllabus is verbatim the same as that just quoted from Wilson v. Hoffman.

This case is also very similar on the facts to Tchula Commercial Co. v. Jackson, 147 Miss. 296, 111 So. 874, wherein this Court adhered to its former decisions and quoted with approval from the early case of Soggins v. Heard, supra.

In some of its aspects this case is also similar to Foster v. Campbell, 145 Miss. 502, 113 So. 550, wherein this Court quoted with approval from Elmslie v. Mayor, supra, and held that a foreclosure sale should be cancelled in view of grossly inadequate price in connection with abuse of confidence.

The Mississippi decisions on this subject are abundantly supported by decisions from other jurisdictions. In 54 Am. Jur. (Trusts) Sec. 241, p. 184, it is said: ''All authorities agree upon the principle that a constructive trust will arise where, in addition to the breach of agreement to purchase for the owner or one having an interest at such a sale, there are circumstances of fraud or abuse of confidence, conduct, or facts that would tend to raise an equitable estoppel to assert the defense of the statute of frauds. A constructive trust will be declared where it appears that the promisee or principal furnished the purchase money, or a part thereof; refrained from bidding by reason of the agreement, promise or agency *relaxed his efforts to save the property from being sold,* or to prevent a sale at a sacrifice; or where it appears that the promisor or agent bought in the property at a price greatly below its value, or that the agreement was

known to other possible bidders and as a consequence chilled their bidding."

Numerous authorities are cited in the annotations to the above quotation which support the text thereof. The amended bill in this case charged positively that complainants had made arrangements with another party to advance the money necessary to save their property, and that R. M. Bridgforth intervened and insisted that he be permitted to make the loan, and that his promises were relied upon by virtue of the confidence placed in him, and that the efforts to obtain the money from the other party were relaxed.

In Slowey v. McMurray, 27 Mo. 113, 118, 72 Am. Dec. 251, it is said: "There is another class of cases growing out of the conduct of debtors and purchasers at public sales. This is where the purchaser becomes such under a state of facts as would make it a fraud to permit him to hold on to his bargain. As if a purchaser, by means of a promise to reconvey to his debtor, should induce a relaxation of the efforts on his part to prevent a sacrifice of his property, and thereby obtain it at an under price, or, if the purchaser, taking advantage of that reluctance invariably manifested by those attending public sales to interfere with any arrangement a debtor makes to save his property, should create an impression that he was buying for the debtor, thereby preventing competition, or by any other improper means obtain the property of a debtor at a sacrifice, such conduct would convert the purchaser into a trustee for the benefit of those who were defrauded by his conduct. Such cases go upon the ground of fraud, and courts will give relief without regard to the circumstances whether the agreement was a written or a verbal one, or whether it was supported by a consideration or not."

See also Arnold v. Cord, 16 Ind. 177.

We do not overlook the fact that in the Missouri case just cited there existed between the parties the relation of debtor and creditor, but the same rule has been ap-

plied in cases where such relationship did not exist. In the case of Strasner v. Carroll, 125 Ark. 34, 187 S. W. 1057, 1058, Ann. Cas. 1918E, 306, the facts were almost identical with those charged in the amended bill in the case at bar, even to the fact that Strasner had another friend who would have advanced the money to save his land from the foreclosure sale but relaxed his efforts to obtain the money from that party because of the promise of Carroll, upon which he relied, to appear at the sale and purchase the land in his own name for the benefit of Strasner. In that case the Supreme Court of Arkansas reversed a decree of the Chancellor in favor of Carroll on the facts and remanded the cause with directions to permit Strasner to redeem his land, quoted with approval from Slowey v. McMurray, supra, and said: "It is true the general rule is that a mere verbal agreement by which one of the parties thereto promises to buy in at a judicial sale lands of the other and hold the same for his benefit does not create a resulting or implied trust; the agreement itself being within the statute of frauds. There are, however, several well-recognized exceptions to the rule, and one of them is that where the purchasr of lands in which the other is interested becomes such under such a state of facts as would make it a fraud to permit him to hold on to his bargain."

In Patrick v. Kirkland, 53 Fla. 768, 43 So. 969, 125 Am. St. Rep. 1096, 12 Ann. Cas. 540, it was held: "A mere parol agreement, without consideration, to buy in land at an execution sale and to reconvey it to the judgment debtor upon payment of the purchase price and interest, may not create a trust in favor of the judgment debtor; but, where there is in the transaction an element of equity arising from fraud, confidential relation, refraining from bidding at the sale, or from further protection of the property from sale, gross inadequacy of the purchase price, the supplying by the debtor of a part of the purchase money, or otherwise, such circumstances may be shown by parol, and establish a trust."

The authorities are so numerous on this question that it would unduly extend this opinion to quote from them. The decree sustaining the demurrers to the amended bill was manifestly erroneous, and the same is therefore reversed and the cause remanded for a trial on the merits.

Reversed and remanded.

**Montgomery, J.,** took no part in the decision.