473 So.2d 416 (1985)
Aletha H. ALLGOOD
v.
Hershel W. ALLGOOD.
No. 55535.
Supreme Court of Mississippi.
July 17, 1985.
*418 R.K. Houston, Bay Springs, for appellant.
William R. Ruffin, Bay Springs, for appellee.
Before WALKER, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Over title to thirteen acres of less than flourishing Jasper County timber lands and minerals of at best modest value  and no doubt other real or imagined sins of each toward the other, Aletha H. Allgood and her son Hershel W. Allgood have gone to war. The dust has settled sufficiently that we may hold, under the rules of law applicable to such cases, that Aletha holds the property subject to a constructive trust in favor of Hershel. The chancellor's decision to that substantive effect is affirmed.

II.

A.
At sometime prior to 1973 Larry Allgood had acquired by inheritance the 13-acre tract here in dispute, together with an undivided interest in certain minerals, all situated just across the road from the Antioch Church in the Second Judicial District of Jasper County. Larry determined to sell this property and in that connection he communicated with Aletha Allgood, who was the Defendant below and is the Appellant here. Aletha had lived in the vicinity of the disputed property for years. She had worked for many years as a legal secretary and had acquired a certain rudimentary knowledge regarding real estate transactions. Aletha agreed to assist Larry in selling the property and went so far as to advertise the same in a local newspaper listing her local telephone. No sale occurred.
In July of 1973, Hershel W. Allgood was living in San Luis Obispo, California. Hershel was the Plaintiff below and is the Appellee here. Hershel W. Allgood is the son of Aletha Allgood.
In 1960, Hershel had left Mississippi and moved to California. There he met and married his wife, Opal Allgood. The two had lived in California continuously up until July of 1973. At some time prior to July, 1973, Hershel and his wife decided to leave California and move back to Jasper County, Mississippi. They communicated this interest to Aletha in a telephone conversation which occurred a few weeks prior to July 11, 1973. At the time of this telephone conversation, Aletha was in Jasper County, Mississippi, and her son Hershel and his wife Opal were in California. During this telephone conversation, Hershel told his mother that he would like to purchase Larry's property in Jasper County, if she could make the necessary arrangements  Hershel being in California and not being able to come to Mississippi. According to Hershel, his mother agreed to effect this purchase for the sum of $3,500.00. The description of this three-way telephone conversation found in the brief of Aletha Allgood is as follows:
Hershel W. Allgood stated, "I called or either she called  anyway we were talking on the phone  she said the land was available for sale." "And if I wanted it for $3,500.00 she could go ahead and make the arrangements and I could get it." "I asked her if she would go ahead and take care of it, I would like to have it."
Opal Allgood testified that Aletha Allgood
"told him [Hershel] Larry had this land for sale here, which was a part of the old original Allgood property... . Hershel told her to go ahead and get the land for him and take care of it or handle it."
*419 When asked to recall the exact words of the conversation, Opal testified,
"She, or we had called her  I'm not positive who had called who  but she told us that Larry Allgood had this land here for sale and it was part of the original Allgood land, and did we want it; and Hershel said Yes, to get it for him, you know, to make the arrangements and that's as I remember."
Aletha Allgood denied that this conversation took place.
Thereafter Aletha negotiated a $3,500.00 loan from the Newton County Bank, the proceeds to be used for the purchase of the property in question. On July 11, 1973, Larry executed two deeds in favor of Aletha. The first deed conveyed to Aletha the 13-acre tract of land in controversy here. The second deed conveyed certain mineral interests to be mentioned later. Both deeds were filed for record in the office of the Chancery Clerk of Jasper County, Mississippi, on July 16, 1973.
In the closing of the loan with the Newton County Bank, Aletha Allgood, on July 12, 1973, had executed and delivered to the bank a promissory note in the aggregate sum of $4,289.76, providing for payment of thirty-six (36) consecutive equal monthly installments of $119.16 each, commencing on September 1, 1973. On the same date, Aletha Allgood executed a deed of trust conveying the 13-acre tract of land without any reservation for minerals and delivered same to the bank as security for the aforesaid promissory note.
On July 22, 1973, Aletha mailed the two deeds and the installment note to Hershel in California. Within three or four days after receiving same, Hershel called his mother and asked why the property had been conveyed to her rather than to him. She responded that this would make it easier for her to look after the property while he was in California, an explanation which Hershel regarded as "reasonable enough". Thereafter, Hershel made each of the $119.16 monthly payments, excepting only three consecutive payments made by Aletha at a time when Hershel was out of work. Subsequently, Hershel sold timber off the 13-acre tract and from the proceeds of the timber sale repaid to his mother a sum equal to the three payments she had made to the Newton County Bank.
There was other evidence that the parties regarded the land as belonging to Hershel. On one occasion, Hershel listed the 13 acres for sale with a realtor and received the bonus money from a mineral lease, even though Aletha signed this lease because the deed was in her name. Crucial findings made by the chancellor were that Hershel W. Allgood paid all sums owing under the installment note to the Newton County Bank of July 12, 1973, paid all taxes owing with respect to the land from and after its purchase, and "exercised every right as the actual owner of said land and minerals."
Though it was discredited by the chancellor, the testimony of Aletha Allgood should be noted. In the first place, Aletha testified that she had determined to purchase the property for her own investment purposes. This she did prior to any conversations with Hershel or his wife. Aletha testified that after the purchase was made, she did discuss with Hershel the notion of letting him have the property, but only provided that Hershel would make all payments to the Newton County Bank and would also repay to her a $1,700.00 debt said to have existed for more than ten (10) years allegedly arising from Hershel's default in an old car note. Beyond that Hershel was asked to repay some $1,000.00 in miscellaneous advances made between 1974 and 1976.
The net effect of Aletha's approach to the facts was that she had purchased the land in July of 1973 for $3,500.00 and had agreed to sell it to Hershel shortly thereafter for a total consideration amounting to in excess of $6,000.00. The chancellor found that the alleged $1,700.00 indebtedness with regard to the car note never in fact existed, i.e., Aletha never made any such payment for Hershel, and, further, that the other sums said to have been advanced between 1973 and 1976 either were *420 not advanced at all, or were gifts from Aletha to her son having no connection with the purchase of the subject property at all.
Though the 13-acre tract of land has been the focal point of this dispute, there is a related mineral deed executed July 11, 1973, conveying to Aletha Allgood an undivided one-half (1/2) interest in the minerals under 4.4445 acres of the 13-acre tract of land. Aletha subsequently leased these minerals and received rental income in the amount of $462.80.
Prior to 1976 there appears to have existed between Aletha and Hershel a normal mother-son relationship. Certainly, the usual trust accompanying such a relationship existed in 1973 at the time of the purchase of the Larry Allgood property. Familial tranquility rapidly dissipated in 1976 with the divorce of Aletha and Hershel's father, Wallace. The record reflects bitter litigation between Aletha and Hershel regarding Wallace's estate, see Allgood, Adm'r. v. Allgood, 367 So.2d 450 and 372 So.2d 300 (Miss. 1979), as well as a contested proceeding to exhume Wallace's body. Sadly, events and time have led this mother and son to the point where they do not speak to one another.

B.
Prior to the filing of this suit Aletha held record title to the property in issue with respect to which she was out of pocket not one penny. Hershel on the other hand had paid the entire purchase price of the property and had nothing. In this context on June 30, 1983, this civil action was commenced when Hershel W. Allgood filed his complaint in the Chancery Court for the Second Judicial District of Jasper County, Mississippi, naming Aletha as principal defendant. Hershel asserted his claim to the 13-acre tract of land and the aforesaid mineral interests via various trust theories. He also asked payment to him of all income Aletha had derived from her use of the lands. In due course, Aletha answered denying the essential allegations of the complaint and asserting a counterclaim (not involved in this appeal) against Hershel for the sum of $4,306.66 for moneys allegedly loaned by her to Hershel W. Allgood, payment of which was due and owing at the time.
The matter was called for trial on its merits on October 12, 1983. All matters were hotly contested on both the facts and the law. In due course, on October 25, 1983, the chancery court released a memorandum opinion which in substance resolved all disputed fact questions in favor of Hershel
Specifically, the chancellor found:
[A] trust arose by implication of law out of the conveyances from Larry Allgood to Aletha Allgood for the beneficial interest of Hershel Allgood and that such trust and confidence is of like force and effect the same as would have been had Section 91-9-1, Mississippi Code of 1972, had never been adopted by the legislature of Mississippi, and of like force and effect just as if the deeds of conveyance had been made from Larry Allgood to Hershel Allgood and a promissory note executed by Hershel Allgood to Aletha Allgood and a deed of trust executed by Hershel Allgood favoring Aletha Allgood securing payment of such note by his interest in the property conveyed.
The chancellor thereupon entered final judgment declaring Hershel to be the true, lawful and legal owner of the 13-acre tract of land as well as the mineral interests and awarding him judgment against Aletha for the profits derived from her use of the lands totaling $462.80. Aletha was directed to convey the premises to Hershel W. Allgood "free and clear of any and all debts, liens and encumbrances of record or otherwise... ." Aletha's counterclaim against Hershel W. Allgood was dismissed with prejudice.
Aletha has perfected her appeal to this Court where the matter is now ripe for review.

III.
The thrust of Aletha's appeal is that the evidence is insufficient to establish a trust *421 relationship between her and her son respecting the 13 acres and the minerals. This being so, Aletha argues that, as record title holder, she must prevail. The appeal is without merit.
We note at the outset that the trial judge found that Aletha held title subject to a resulting trust in favor of Hershel. The facts import a constructive trust, with the same result.
A constructive trust is a means recognized in our law whereunder one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs. Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963); Russell v. Douglas, 243 Miss. 497, 505-06, 138 So.2d 730, 734 (1962); Rimmer v. Austin, 191 Miss. 664, 668, 4 So.2d 224, 225 (1941). It prevents unjust enrichments.
Such a trust arises by implication from the relationship and conduct of the parties and may be established by parol testimony notwithstanding the statute of frauds. Triplett v. Bridgforth, 205 Miss. 328, 349, 38 So.2d 756, 764 (1949); Saulsberry v. Saulsberry, 223 Miss. 684, 78 So.2d 758, 761 (1955). Substantial overreaching or fraud must be shown. Pitchford v. Howard, 208 Miss. 567, 583, 45 So.2d 142, 147 (1950).
Proof of facts necessary to establish a trust by implication of law, i.e., a constructive or resulting trust, must be clear and convincing. Shumpert v. Tanner, 332 So.2d 411, 412 (Miss. 1976); Sojourner v. Sojourner, 247 Miss. 342, 356, 153 So.2d 803, 809 (1963); Conner v. Conner, 238 Miss. 471, 516, 119 So.2d 240, 260 (1960); Saulsberry v. Saulsberry, 232 Miss. 820, 837, 100 So.2d 593, 600 (1958); see Bogert and Bogert, Trusts and Trustees § 472 (rev. 2d ed. 1978).
In this context, we must remind Aletha what we trust is clear and accepted that we sit as an appellate court, not as triers of the facts ab initio. PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205 (Miss. 1984). Our scope of review of findings of fact is severely limited. Findings of fact made by a chancellor which are supported by credible evidence, may not be set aside on appeal. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); see also Anderson v. City of Bessemer City, 470 U.S. ___, 105 S.Ct. 1504, 1511-13, 84 L.Ed.2d 518, 528-29 (1985).
No extensive elaboration upon these principles or their application to the facts found is necessary to see that affirmance is required. The trial judge patiently listened to the witnesses and has resolved all material fact questions in a manner well within his authority. He comprehended and applied the clear and convincing evidence burden of proof standard. He found in essence that Aletha was holding property that Hershel had paid for. That he labeled the trust he found implied resulting rather than constructive is of no consequence, for it requires little imagination to perceive that upon the facts found Aletha unfairly holds title and ought in equity be required to convey it to Hershel.[1]
*422 The judgment below to the effect that Aletha must convey to Hershel the 13-acre patch of land can only be affirmed.

IV.
Aletha's appeal on the separate mineral deed may be quickly dispatched. The understanding Hershel had with his mother back in early July of 1973 was that he would acquire title to the 13-acre tract. The fact that Aletha insists upon so strongly  that there was no discussion regarding minerals  can only be construed that there was no understanding that the minerals would be excepted from the purchase. In the envelope Aletha mailed to Hershel on July 27, 1973, the mineral deed was included.
The evidence appears without contradiction that on April 15, 1981, Aletha Allgood had leased the minerals for $462.80 in bonus and delay rentals.
We have heretofore held that the beneficial interest in the property at issue at all times belonged to Hershel. Aletha's posture was and is that of a trustee only. This being the posture of the parties and their respective rights and responsibilities with reference to the property, it goes without saying that Aletha as trustee is liable to Hershel for all incomes and profits she received with reference to that property with respect to which she was trustee only. The chancellor was correct in awarding judgment in favor of Hershel W. Allgood and against Aletha H. Allgood in the amount of $462.80.

V.
Aletha opens both her brief and abstract by noting that this civil action was commenced nine years, eleven months and fourteen days after the July 11, 1973, deeds which are the subject of this action. Her problem is that this is within the ten year limitations period applicable to such actions. Miss. Code Ann. § 15-1-9 (1972). She nevertheless argues that this action should be held barred under the equitable doctrine of laches, so often that last gasp plea of a dying cause.
The essence of the claim is this. In December of 1980, Aletha Allgood obtained a loan from Newton County Bank and, to secure repayment of that loan, executed a deed of trust on the lands in question. This note has been renewed and the amount owing at the time of trial was some *423 $6,300.00. Aletha points to that portion of the final judgment of the chancery court which requires that she convey the 13 acres unto Hershel W. Allgood free of any and all liens and encumbrances. The net effect of this judgment is that she is required to discharge the $6,300.00 deed of trust.
The problem with Aletha's laches claim is that though pled it was never litigated nor decided. There is nothing in the record suggesting that the trial judge was requested to make findings of fact or enter conclusions of law regarding the laches plea, see Rule 52(a), Miss.R.Civ.P., and, not surprisingly, the point is mentioned neither in the trial judge's memorandum opinion of October 26, 1983, nor his final judgment entered November 7, 1983.
As a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court. See Nationwide Mutual Insurance Company v. Tillman, 249 Miss. 141, 156-57, 161 So.2d 604, 609 (1964) and particularly Stubblefield v. Jesco, Inc., 464 So.2d 47 (Miss. 1984) where we recently refused on appeal to consider whether defendant was entitled to a new trial where it had filed a formal motion for a new trial but had not obtained from the trial judge a ruling on that motion. Aletha having failed in this regard, we deny her assignment of error predicated upon a plea of laches.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Because the trial judge found a resulting trust in favor of Hershel and because the parties' briefs have presented the law of resulting trusts, a note is appropriate.

Over the years we have expressly delineated some circumstances under which one holds unfairly a property interest in equity belonging to another and have labeled those resulting trusts. All others we call constructive trusts. The point is that there is no essential difference between the equities necessary to generate a resulting trust as compared with a constructive trust. Generically speaking, a resulting trust appears merely a subspecies of constructive trusts.
That which we have historically labeled a resulting trust may arise in several ways. Most familiar is the case of the transfer of property made to one person with the purchase price being paid by another, a resulting trust being said to arise in favor of the person by whom the purchase price is paid. Restatement, Trusts 2d § 440 (1959); Windham v. Windham, 218 Miss. 547, 67 So.2d 467, 470 (1953); Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 151 (1955).
Our law also recognizes that a trust results where a transfer of property is made to one person [Aletha Allgood] and another person [Hershel Allgood] at the time of the transfer undertakes an obligation to pay the purchase price. Restatement, Trusts 2d § 456 (1959); V Scott, The Law of Trusts, § 456.2 (3d ed. 1967).
While the equities necessary to generate a resulting trust are present in the case at bar, the facts seem fuzzy regarding two formal requisites. First, resulting trusts arise from prior agreements, express though oral. The parties agree that the transfer of property will be made to one party with the purchase price being paid by the other. Here, Hershel made no advance agreement that title should be taken in Aletha's name. He merely acquiesed thereafter. Second, a resulting trust arises provided the beneficiary incurred "an absolute obligation to pay" at the time of the transfer and as a part of the original transaction of purchase. Bush v. Bush, 134 Miss. 523, 99 So.2d 151, 152 (1924); quoted in Brown v. Gravlee Lbr. Co., 341 So.2d 907 (Miss. 1977); and Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 151 (1955). Here the evidence is less than precise whether Hershel incurred any such absolute obligation. In any event, we have before us neither finding of fact nor conclusion of law regarding the nature and extent of Hershel's obligations prior to the time Aletha took title in her name. That these formal requisites might not appear in no way suggests an absence of equities sufficient to subject the property in Aletha's hands to an implied trust in favor of Hershel.
The authorities called to our attention by Hershel  Robinson v. Leflore, 59 Miss. 148 (1881); Wilson v. Hoffman, 104 Miss. 743, 61 So. 699 (1913); Tanous v. White, 186 Miss. 556, 191 So. 278 (1939); and Campbell v. Millsaps, 12 So.2d 526 (1943)  involve factual situations differing from that present in the case at bar. The decision in each of these cases, however, rests upon the principle that, where a transfer of property is made to one person (A), and another person (B) at the time of transfer undertakes an obligation to pay the purchase price, a resulting trust arises in favor of the latter person (B). Reduced further these cases are premised upon the notion that where, under the facts and circumstances of a given case, legal title is vested in one who in equity and good conscience ought be required to hold it as trustee for another, our law operates to impose and enforce just such a trust. It is this notion that undergirds the trial judge's ruling in favor of Hershel in the case at bar, as well as the heresy noted above that, generically speaking, a resulting trust appears merely a subspecies of constructive trusts.